| 1 | 65 |
|---|---|
| 102 | 21 |

Alabama,
| 1 | 65 |
|---|---|
| 124 | 651 |

## LEWIS VS. POST & MAIN.

1. In a suit against L. as a partner of a firm, known by the name of L. & B., letters, written in the name of the firm by L., and entries made by him in the books of L. & B., are *prima facie* admissible in evidence to charge him as a partner.

2. When a witness, on cross examination admits that, he wrote a letter containing a different statement from that which he gave in evidence, and with the letter before him, states its contents to the jury, the adverse party is entitled to read the letter to the jury.

3. In an action against L. charging him as the partner of B.; the latter, is not a competent witness to prove the fact of partnership.

4. When a witness, on cross examination, is asked whether he has not made other statements than those sworn to, he may enquire as to the particular time or state-

9

Lewis vs. Post & Main.

ment to which the cross examination relates, and if the information is not given he ought not to be compelled to answer.

5. Letters written by third persons at the instance or request of the defendant, are not admissible in evidence to rebut the presumptions arising from letters proved to be in his hand writing.

6. Evidence of *intermeddling* in the affairs of a partnership if given in general terms, is objectionable ; but in such a case the exception must be to the uncertainty of the evidence.   Specific acts of intermeddling with the business, are evidence, to go to the jury, for them to determine the character in which such acts were performed.

Writ of error to the Circuit Court of Montgomery County.

POST & Main declared against Lewis in an action of assumpsit on a promissory note, described as having been made by the defendant, by the name of Lewis & Barry.   In addition to non assumpsit and other matters of defence, the defendant pleaded a special plea, which asserts that the note declared on, is not his act and deed, he having signed the name of Lewis & Barry as the agent, and at the request of a firm of that name, in which one William F. Lewis is the partner.   Issues were joined on all the pleas; and the cause was submitted to a jury who returned a verdict for the plaintiffs, on which judgment was rendered.

In the progress of the trial, a witness proved that the defendant employed him to attend to the books and business of Lewis & Barry ; that the defendant attended to the business of the firm in the same manner as any partner of it ; that he made entries in the books, attended to the correspondence and financial affairs of the firm ; that he took money from the clerk and charged himself therewith ; that his family drew their daily supplies from the firm ; and the witness was controlled by him in the business of the firm ; and that the note declared on was signed by him.   The plaintiffs then offered to read the original letters of Lewis & Barry in the hand writing of the defendant, accompanied by the letter book of the firm, also in his hand writing ; also the day book of the firm, and proposed to read entries and letters therein made by the defendant ; the letters were written

Lewis vs. Post & Main.

to various creditors of the firm ; the entries were for goods sold by the firm, and of other transactions.  Much other evidence was given on behalf of the plaintiffs, tending to show that the defendant was one of the partners of the firm of Lewis & Barry.

The defendant objected to the books as evidence, and to the reading of the letters and entries ; but the Circuit Court overruled the objection.  Copies of the letters and entries are attached to the bill of exceptions, but they are not necessary to be described, as the exceptions, is disposed of by the Court, without a particular examination of their subject matter.

The plaintiffs then proved by a witness that the defendant and one John C. Barry purchased a stock of goods from the firm of which the witness was a partner ; that the purchase was made by the defendant and Barry ; that when the purchase was made the witness only knew the defendent and Barry as composing the firm of Lewis & Barry.  On cross examination, this witness stated that seven or eight days after the purchase was made, and when it was about to be consummated, the defendant offered several notes in payment of the goods ; these notes were drawn by Lewis & Barry payable to, and endorsed by the defendant ; the witness objected to receiving these notes, as Lewis & Barry, by the terms of the contract were to give a good endorser ; the defendant then stated that he had a brother whom he wished to put in business with Barry, and did not, himself, wish to be publicly known as a partner of the firm at that time, but intended at some subsequent period, to become known as such.  This witness also stated that on the 20th January, 1837, he had written a letter to Lawrence, Keese & Co. of New York, in which letter he stated the firm of Lewis & Barry, was composed of William F. Lewis and John C. Barry alone, and with the letter before him, stated its contents to the jury.  The defendant offered to read this letter to the jury, to show the bias of the witness in giving his testimony, but the Circuit Court would not allow it to be read, for the reason that the witness had fully stated its contents to the jury.  As the opinion of the Court is not influenced by the terms of this letter, it is deemed unnecessary to set it out.

A letter written by the defendant also, to Lawrence, Keese & Co. was the subject of an exception in the Circuit Court, but this letter is not exhibited, though referred to in the bill of exceptions.

The plaintiffs then offered John C. Barry, one of the partners of the firm of Lewis & Barry, and one of the makers of the note sued on, to prove that the defendant was his copartner in the said firm and in the note sued on. This witness was not released by either party to the suit, and was permitted to testify, although objected to by the defendant. On cross examination, it was demanded of this witness whether he had not, on a former occasion said, that the defendant was not a partner of the firm of Lewis & Barry. This question was objected to by the plaintiffs, and the Circuit Court decided that the witness might enquire as to the particular time or transaction to which it related, and if not communicated he should not be held to answer it.

To rebut the presumption raised by a letter written by the defendant and signed Lewis & Barry, in which it was stated he had taken an interest in the concern, he proposed to read the letter from the witness who spoke, with the letter before him, (the same which the Circuit Court would not allow the defendant at that time to read;) the letter being to the same house and containing a statement that the firm consisted of William F. Lewis and John C. Barry. This was refused by the Circuit Court. The defendant objected to all the evidence before stated which tended to show that he, by meddling in the affairs of Lewis & Barry had, thereby, made himself liable as a partner, because this evidence was inadmissible under the issue formed. This was also over-ruled, and all the questions arising out of these several matters were reserved and are presented in the assignment of errors.

THORINGTON, for the plaintiff in error.
BALL, contra.


GOLDTHWAITE, J.—1. The first question arising from the exceptions taken at the trial, relates to the letters and entries

Lewis vs. Post & Main.

shown to be written by the defendant.  A detailed examination of these is not necessary, because we consider all of them, to be *prima facie* admissible, from the conceded fact, that each was written by the defendant.   If any portion of this evidence was liable to exception, the attention, of the Circuit Court ought to have been called to the precise point which made its exclusion proper, because the adverse party might, in that event, have obviated the exception by other evidence, or could have withdrawn that which was illegal or irrelevant.  A contrary course is more important to mislead an adversary, than to advance the ends of justice, and can receive no sanction from this Court. The point to be established before the jury was the defendants connexion as a partner with the firm of Lewis & Barry.   The entries made in their books, as well as letters written in their names by him, tended directly to prove the issue.   There is therefore no error in this particular.

2. The next exception is for excluding the letter, written by the witness, who admitted, on cross examination, that this letter contained a different representation of facts than that which he then deposed to.  This letter the defendant wished to read to the jury, but the Circuit Court would not allow it to be read, because the witness stated its contents to the jury.   The rule is, that the adverse party will not be permitted to impeach the credit of a witness, by showing that he has made other statements of the facts given in evidence by him, unless, the enquiry is first made of him whether he has made such statements.   [The Queens case, 2 B. & B. 30Q ; 3 Starkie on Ev. 1753.]   The reasonableness of this rule is made obvious ; a very improper impression of the credit due to a witness might be received, when it appeared that he had on different occasions given different versions of the same facts; and yet, the witness might be entirely credible and wholly free from blame, if allowed to explain the circumstances under which the different statements were made, or which caused them.   It is, therefore, not permitted to impeach a witness for this cause, unless the opportunity is accorded to him, of giving his own explanation of the variant statements. Beyond this, however, the rule does not extend ; it will not ex-

clude the evidence of the variant statements, because the explanation is satisfactory to the Court, or because the variance is admitted in the same manner that it might be proved. These are circumstances to be weighed and determined by the jury, and it is impossible for them to determine whether the contents of a letter had been fully stated without having the letter in evidence before them. A Court might consider the witness as having admitted the same variant statement as contained in the letter ; the party might think otherwise. It is because the jury are the only proper judges of the effect and weight of these matters, that the letter should have been read. The letter might not, and probably would not, have influenced the decision of the jury, but it should have been admitted, and the reason given for its rejection cannot be sustained.

An exception, seems, from the bill of exceptions, to have been taken to the introduction of a letter to Lawrence, Keese & Co. of New York, but it either has not been sent up with the transcript, or its distinctive mark has been omitted. An examination of it cannot, therefore, be made.

3. The question arising out of the admission of the partner, Barry, as a witness is one of much intrinsic difficulty. On no subject are the decisions more numerous or variant than of the interest which will disqualify a witness ; to state the cases would be laborious, and to review them within the limits of an opinion, entirely impracticable. It may be remarked that there are decisions of the English Courts directly on this question, and which hold that a partner is a competent witness, if not a party to the suit. (Lockhard vs. Graham, 1 Strange 35 ; York vs. Blott., 5 M. & S. 71 ; Blockett vs. Weir, 2 B. & C. 385 ; Hall vs. Curzin et al., 9 B. & C. 646.) The reasons on which the competency of a partner is supposed to rest, are thus stated by Chief Justice Abbot, in the case of Blockett vs. Weir. "It is the interest of the witness to defeat the plaintiff, for in the event of his recovery, the defendant would be entitled to contribution from the witness. In cases of trespass, witnesses, apparently open to a much stronger objection, are constantly admitted. In that action a recovery, against one of several co-trespassers, is a

Lewis vs. Post & Main.

bar to an action against the others ; and yet scarcely a circuit passes without an instance of a person who has committed a trespass, being called on to prove that he did it by the command of the defendant. In that case a verdict would operate as a discharge of the witness, there being no contribution in actions of tort ; here, on the contrary it brought a liability on him." These reasons, it must be admitted, are not satisfactory. It is true that the defendant partner, in case of a recovery and payment, will have the right of contribution against the witness; and it is equally so, that the witness discharges himself from one half of an admitted responsibility, if the judgment, obtained by means of his evidence, is followed by successful execution. If a witness was to admit on his *voir dire* that he expected by his evidence to cast on another, a portion of a burthen which he otherwise would have to bear alone, it barely admits a doubt that he would be incompetent, and we cannot shut out the fact, that in every case of this description, this would be the result contemplated. On the other hand the case of co-trespassers is strikingly, if not precisely, analogous;—not because a *recovery* against one is a bar to an action against the other ; but because the *satisfaction* of the *judgment* would be an extinguishment of the right of action against the witness. A Court of justice would not, probably, allow the satisfaction of a judgment against one co-trespasser against the wishes of a plaintiff who desired to proceed against others for the same trespass and therefore a satisfaction could not be made without his consent. The reason why this course would be allowed in the case of joint trespassers is to enable the plaintiff to proceed until he has obtained a verdict satisfactory to himself, or until he has exhausted his remedies against all the co-trespassers. This, of course, could not be pursued as against partners, or rather there would be no use in such a course, as the recoveries must necessarily be the same against each partner. Whether this difference creates a distinction between the cases of partners and co-trespassers, or whether the latter forms an exception to the general rules of evidence, is not now necessary to be determined.

As the adjudications on this subject are not satisfactory, let the

question be brought to the test of well established and admitted rules of evidence.  A witness is incompetent when he is directly interested in the event of the suit, or when he can avail himself of the verdict so as to give it in evidence on any future occasion in support of his own interest.   (Smith vs. Prayer, 7 Term 60 ; Bent. vs. Baker, 3 Ib. 27.)   It is certain that a verdict obtained on the evidence of a partner could be of no avail to the witness in any suit *by him*, and it could be given in evidence *against him* in a suit for contribution ; the case is, therefore, not within the latter clause of the rule.   The meaning of the term *direct interest*, which is spoken of in the rule, requires some examination.   A *direct* interest is one which is *certain* and not contingent or doubtful.   (Rex. vs. Bray., Hard. 360 ; Bent. vs. Baker, Smith vs. Prayer, supra.)   But is an interest contingent or doubtful which only requires the aid of an execution to enforce it ?   If it were so there is a very small class of cases which could be considered as *certain ;* perhaps none except those in which the witness had previously received the benefit. A witness who is to receive a portion of the thing recovered, and nothing, if a recovery is not had, is clearly incompetent ; so likewise a distributee is incompetent to increase the distributable fund : yet in each of these cases the successful prosecution of the judgment by execution, or by a voluntary payment is essential before the interest becomes *certain ;* until then it is doubtful whether it ever will be productive, and the interest is contingent on the collection.   We do not see how a matter, which is dependent alone on the successful prosecution of an execution, to which the law ascribes great potency, can be considered as uncertain, or otherwise than direct, in the sense of the rule.

If then, the judgment which is obtained on the evidence of a partner will enure to his benefit when collected, by discharging him from the payment of a portion of a sum of which he otherwise might have been compelled to pay the whole ; it cannot be said that he has no interest in the suit, or that it is uncertain, doubtful, or contingent in the legal sense of these words.   Whenever by operation of a judgment at law, without the act of the party, a debt or right of action will be extinguished or lessened,

Lewis vs. Post & Main.

we must consider the extinguishment, whether in whole or in part, as the necessary result of the verdict, and a witness who is interested to produce such a result, is by the general rules of evidence incompetent without a release.

We have preferred to rest our decision of this question on the reasons given, rather than on authorities which might have been cited ; we cannot, however, in justice omit the case of Purviance vs. Dryden [3 S. & R. 402] in which the Supreme Court of Pennsylvania arrived at the same conclusion on a similar state of facts. [See also McVorough vs. Goods, 1 Dall. 62 ; 2 Ib. 50.]

Our conclusion is that the witness Barry was incompetent, and ought not to have been permitted to testify.

4. The exception to the decision of the Circuit Court, that this witness should be permitted, when he was asked if he had not made other statements than the one to which he then deposed, to enquire as to the particular time or transaction to which the question related, is free from error. We have before adverted to the decision of the English Judges in the Queen's case. The rule then settled is most salutary, and its object is to prevent a witness from being discredited on account of a contradiction in statements made by him, which may be compatible with the strictest veracity. It is obvious that a mere general interrogatory to the witness, whether he had ever made statements different from that sworn to, would in most instances be nothing more than asking him to discredit himself ; this, the law will not allow, and if the object of the defendant was to show that he had made other statements, the witness was entitled to know when or to whom they were made, in order that he might, if he could give a satisfactory explanation.

5. The presumption, arising from letters proved to be written by the defendant, would not be rebutted by showing letters written by other persons acting under his advice or at his request ; this, in effect, would permit a defendant to make evidence in his own behalf. There was therefore no error in refusing to permit the letter written by the witness to Lawrence, Keese & Co. to be read for this purpose ; though as we have already shown it ought to have been read in another aspect of the case.

10

6. Evidence of meddling in the affairs of the firm of Lewis & Barry, if given in general terms, would have been objectionable, because it would be impossible to ascertain what was meant by such an expression ; but the exception here is not to the generality of the evidence, but to its effect, as not conducing to prove the issue. It is too clear to require illustration that if one acts or meddles in the concerns of a firm as if he was interested therein, the specific acts are proper evidence to be left to the jury for them to determine the character in which such acts were performed.

It only remains to announce the result of our opinion, which is, that the judgment of the Circuit Court is reversed for the refusal to permit the defendant to read the letter and for allowing the witness Barry to testify. The cause is remanded for further proceedings.