# Crawford *v.* The State.

*Indictment for Assault with Intent to Murder.*

1.   *Evidence of prior assault; election.*—In a prosecution for an assault with intent to murder, where it appeared that the defendant, going with a friend by night to the house of a woman, there had a difficulty with the prosecutor, whom he found in bed, and, as the evidence tended to show, attempted to cut him with a knife; after which, being separated, the defendant went home, but returned in about an hour, and discharged a double-barrelled gun at the prosecutor; *held*, that if the assaults were not parts of one and the same continuous transaction, the prosecution was not precluded from introducing evidence of the second assault, because evidence of the former difficulty had been already adduced, and that a case of election was not presented.

2.   *Assault with intent to murder; constituents of offense.*—To authorize a conviction for an assault with intent to murder, malice a forethought must be shown, or, what is substantially the same thing, the offense must have been perpetrated pursuant to a formed design, and by the use of a weapon ordinarily calculated to produce death; but the discharge (or attempted discharge) of a loaded gun at another, within carrying distance, if unexplained, raises the presumption of malice, and authorizes a conviction.

FROM the Circuit Court of Dallas.

Tried before the Hon. JOHN MOORE.

The defendant in this case, Daniel Crawford, was indicted for an assault on George T. Steel, with the intent to murder him; was convicted, and sentenced to the penitentiary for the term of five years.   On the trial, as the bill of exceptions shows, two policemen of the city of Selma, S. M. Payne and

W. C. Rosser, were introduced as witnesses on the part of the prosecution. Payne testified "in substance as follows: One night in March, 1885, about midnight, while witness was on duty in the streets of Selma, he met the defendant and a man named Desha. Desha was very drunk, and defendant was pretty full. Defendant told witness that he was taking Desha to the house of Mollie Bernhard to stay that night; that they would not let him stay at the hotel; and he asked witness to assist him. Witness went with them. When they got to the house, some one of them knocked on the door, for it to be opened. Heard some one in the room object to opening the door, but it was opened; and they found Steele, the man named in the indictment, in one of the two beds in the room. Desha was put in the other bed. Steele, still in bed, said to Mollie Bernhard, 'It is the last time you will ever let any one in on me.' Defendant then made some remark, and he and Steele had some words; but witness did not understand what they said. Steele and defendant took drinks when we first went in. When we started out, Steele was still in bed talking. The talking between them was in an angry manner, and Steele appeared to be very mad. When defendant got to the door going out, Steele still talking angrily in bed, defendant stopped, and witness heard a clicking noise like the opening of a knife; when defendant went back, and jumped on Steele in the bed, and they fought until witness separated them. Witness got defendant out of the room as soon as he could, and Steele followed them, with an open knife in his hand, attacked defendant, and tried to cut him with the knife; but witness kept between them, and prevented it. Steele said he had taken the knife from defendant during the fight in the bed. Defendant started off, saying, he 'would kill the damned rascal before day,' and went in the direction of his house, which was about one quarter of a mile distant." The witness further testified, that he waited in the neighborhood for some time, fearing that the defendant would return, and renew the difficulty; and that about an hour afterwards, hearing two reports of a gun in quick succession, at or near the house, he ran there as fast as he could, and found the defendant with a double-barrelled gun in his hands. The defendant then "objected to the State introducing any evidence as to any difficulty or trouble between him and Steele, other than the one already testified to by said Payne, on the ground that the State, having introduced evidence of that fight, and

2

[Crawford v. The State.]

the particulars thereof, had thereby elected to prosecute for that difficulty;" and he excepted to the overruling of his objections. The witness then stated, that he found the defendant at the front door of the house, with the gun in his hands, holding it before him in a position to shoot quickly, and inquiring for Steele; that not finding Steele in the front room, defendant kicked open a door which communicated with another room, and went into that room; and that he (witness), after a struggle, succeeded in taking the gun from him, which was loaded with two fresh shells. Rosser, also, who had gone to the house on hearing the report of the gun, testified to the defendant's threats and conduct on the occasion, in substance as Payne had testified; and the court admitted the testimony, against the objection and exception of the defendant. It does not appear that Steele was examined as a witness; but Rosser testified, that on the next morning, in the mayor's office, "Steele stated, in the presence and hearing of the defendant, that the defendant shot [at] him as he was running out of the rear door, the shot passing in front of his thighs, cutting away a part of his pants, which he exhibited; and that defendant did not deny it." After all the evidence was in, the defendant again renewed his motion to exclude all the evidence relating to the second difficulty, or what occurred after he returned to the house; and excepted to the overruling of his motion.

The defendant, testifying as a witness for himself, denied that he had a knife at the time of the first difficulty; and stated that he went back to the house to get Desha away, and that the gun was discharged, each time, accidentally, while the muzzle was pointing upwards.

The court charged the jury, on the request of the solicitor, "that if they believe from the evidence, beyond a reasonable doubt, that after the door was broken open, or opened, the defendant fired a second shot at Steele as he was going out of the side or rear door, having at the time the intent to kill him, then he would be guilty as charged." The defendant excepted to this charge, and also to the refusal of two charges asked by him in writing, namely: (4.) "Under the law, even proof of an actual intent to kill or wound is not sufficient evidence of an intent to murder; and assuming the necessary intent to exist, the act must have some adaptation to accomplish the particular thing intended." (5.) "Act and intent must always combine, and always in point of time; and if Steele had received the charge from the gun, and had died

[Crawford. v. The State.]

therefrom, this would not be sufficient evidence of an intent in the defendant to murder him."

WATTS & SON, for appellant, cited *Ogletree v. State*, 28 Ala. 693; *Elam v. State*, 26 Ala. 48; *Williams v. State*, 77 Ala. 55.

THOS. N. McCLELLAN, Attorney-General, *contra*, cited *Smith v. State*, 52 Ala. 386; *Jordan v. State*, 81 Ala. 20; *Hadley v. State*, 55 Ala. 31.

STONE, C. J.—We do not think the doctrine of election of offenses, on which to base a claim of conviction, is raised by the facts of this case. The testimony of the witness Payne, as to the altercation and scuffle, which occured in Mollie Bernhard's house, does not appear to have been offered for the purpose of establishing that act, as, in and of itself, a substantive offense. It was introductory to, and largely a part of, the graver offense alleged to have been committed when the defendant returned. It tended to show defendant's purpose in returning; and whether proved before or after the testimony of the shooting was given, its tendency, in connection with the alleged threats, was to prove malice, or formed design. In fact, everything proved may be regarded as in its nature a continuous transaction, the first altercation giving color to the culminating act.—*Jordan v. State*, 81 Ala. 20.

It is not every assault with intent to kill, that constitutes the statutory felony, known as an assault with intent to murder. To come up to that high crime, the offender must have been influenced by malice aforethought, or, what is substantially the same thing, the offense must have been perpetrated pursuant to a formed design, and by the use of a deadly weapon, or other means ordinarily calculated to produce death. A loaded gun, discharged, or attempted to be discharged at another, within carrying distance, is a deadly weapon, and, unexplained, raises the presumption of malice aforethought. Such proof, unrebutted, authorizes the jury to convict of the felony.—*Hadley v. State*, 55 Ala. 31.

Charges given or refused, must be interpreted in the light of the testimony. There was no testimony of provocation, or other excuse, calculated or tending to reduce the homicide to manslaughter, if death had ensued. The only defensive

[Gandy v. The State.]

excuse offered was, that the gun was discharged accidentally. So, if the jury believed the shots were fired intentionally at Steele, with intent to kill him, there was no testimony tending in the least to repel the imputation of malice. The testimony of what had previously taken place went to prove formed design, and it tended to prove nothing else.

Charge 4, asked by defendant, was properly refused, because, under the testimony shown in this record, unrebutted and unexplained as it was, if the gun was discharged at Steele, in shooting distance, with the actual intent to kill him, it could not be affirmed, as a matter of law, that such ascertained fact was insufficient to authorize defendant's conviction of assault with intent to murder. And, for the same reason, the charge given at the instance of the solicitor, construed in the light of the testimony, is free from error. 3 Brick. Dig. 115.

Affirmed.

