THE STATE OF IOWA v. MAX BYSONG, Appellant.

**Evidence:** IMPEACHMENT: *Cross-examination.* Where the prosecutor in a prosecution for assault with intent to inflict great bodily harm testified that defendant knocked him down and kicked him, whereby his arm and several of his ribs were broken, which was contradicted by defendant, who claimed that the injuries were sustained while the witness was fixing a barn, the question, on cross-examination, whether the witness did not tell one B., in W. township, F. county, Iowa, in August, 1899, that the injury refered to was sustained while fixing a barn, was not objectionable on the ground that the time and place were not sufficiently specified for the purposes of impeachment, or as improper cross-examination, and the refusal to admit it was erroneous.

ADMISSIBILITY AND RELEVANCY. Where a father, who had his son arrested for assault with intent to inflict bodily injury, testified that defendant was absent from home for a year, the admission of evidence, on his part, over defendant's objection, that defendant during such time was in jail, was erroneous, and should have been excluded as immaterial.

*Same.* It was competent to show that the son was heard, in August, 1899, to threaten to whip the father and that he hit the father with a fork, as showing the feelings between the parties.

*Same.* Where a father, who lived on a farm with his son, had the latter arrested for assault with intent to inflict bodily injury, the exclusion of the question, on cross-examination of

prosecutor, if he did not sell the crop after defendant was arrested and put in jail, was erroneous, as the question was competent to show the motive of the witness in instituting the prosecution.

*Appeal from Fayette District Court.*—HON. L. E. FELLOWS, Judge.

WEDNESDAY, DECEMBER 19, 1900.

THE defendant, Max Bysong, was indicted, tried and convicted of the crime of assault with intent to inflict great bodily injury upon Samuel Bysong, and judgment of imprisonment and for costs was rendered against him, from which he appeals.—*Reversed.*

*Clements & Clements* for appellant.

*Milton Remley,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the state.

GIVEN, J.—I.   It is charged that the crime was committed on the thirtieth day of August, 1899.   Appellant's first contention is that the court erred in certain rulings in taking the testimony.   A brief statement of the testimony is necessary to a correct understanding of these contentions.   Samuel Bysong testified that he was 70 years of age; that the defendant, his son, was 31, and that they lived alone together on the farm; that on the thirtieth day of August, 1899, they were working together, assisted by three other persons, in putting up hay, and that at noon he and his son returned alone together to their house to get dinner; that while preparing dinner his son became angry at what was said about threshing.   He says: "He got mad about it, and so he commenced abusing me, and the first thing I knew he hit me a welt on the left side of the face and knocked me over beside of the cupboard, and after that he hit me two or three licks; and I got up again and went from there to the back side of the table, and then he

knocked me down again between the table and the wall, and went to kicking me, and I held up my arm, and he kicked my arm where it had been broke before—about 20 days before—and hurt it so that it hurt awful bad, and he kept coming at me and kicking me on the knee and on the legs and in my ribs, and fractured my ribs, and he says: 'Get up, you G—d d——n son of a b——h. I had just as soon finish you as not. If I was doing what was right, I would finish you. And so I got up, and he says: 'I had just as soon take the old shot-gun and blow your d——n brains out.'" Witness further said he tried to get up the horses, "but I couldn't hardly walk, and in all the afternoon I couldn't hardly lift five pounds, because my ribs had been broke, and I hadn't the use of my arm, and I had some sores on me where I had got hurt before." As to all this he is directly contradicted by the defendant, who denies that there was any quarrel, or that he made any assault upon his father. He is also contradicted by the three men who assisted in putting up hay that day as to his condition in the afternoon. They say that he appeared to be the same as in the forenoon, and that he pitched hay during the afternoon the same as he did before noon. On August 31st Samuel Bysong went to Dr. Ainsworth for treatment, and remained under his care for nine days. Dr. Ainsworth found a number of bruised, swollen, abraded, and discolored places on his face, arms, legs, and body, and the ninth and tenth ribs on the left side fractured; also, evidence of a fracture of the left arm, three or four weeks old, that had not fully recovered. The doctor says most of these wounds, bruises, and contusions had been received from 24 to 36 hours previous to the time he saw the patient. Samuel Bysong testified in chief: "I received those injuries that Dr. Ainsworth treated me for from Max Bysong."

II.   The theory of the defense seems to be that the injuries found upon the body of Samuel Bysong were caused in part by an accident to him while fixing a plank in the

barn, and in part by an accident when he was undertaking to grease trucks partially loaded with hay. On cross-examination Samuel Bysong was asked: "Did you say in the presence of one James Brooks, in Windsor township, Fayette county, Iowa, in August, 1899, that, that injury to your arm, which you have just referred to, was received by you while fixing a plank in the barn?" Plaintiff objected as "incompetent, irrelevant, immaterial, not proper cross-examination, and a matter upon which a foundation for impeachment cannot be laid," and the objection was sustained. Like objections were sustained to similar questions as to conversations with other persons as to an accident in the barn, and when greasing the trucks. It is said by appellee that the time and place were not sufficiently specified for purposes of impeachment. We do not concur in this view of the questions, but grant this; still we think the questions were competent, material, and proper cross-examination, in view of what the witness had testified to. Dr. Ainsworth treated him for all his injuries, and the witness testified that he received those injuries from the defendant. Surely it was competent for the defendant to show by the witness himself, if he could, that all or any part of the injuries were caused in some other manner; and this he might do by calling for his statements to others, without specifying persons or places. Aside from this, we think the foundation was sufficiently laid in these questions to render them proper for purposes of impeachment.

III. Samuel Bysong, having testified that Max had been away from the farm for a year, in West Union, was asked what Max was doing in West Union, and was permitted to answer, over defendant's objection, that he was in jail. This was manifestly improper and immaterial, and should have been excluded.

IV. Samuel Bysong was asked, "After the defendant was arrested and put in jail on this charge, you sold that crop, didn't you?" Plaintiff objected as incompetent, irrele-

vant, immaterial, and not proper cross-examination, and the objection was sustained. This inquiry tended to show the motive of the witness in bringing this prosecution and in testifying as he did, and the objection should have been overruled. A witness was permitted to testify, over defendant's objection, that in August, 1899, he heard Max threaten to whip his father, and saw Max hit him with a fork. This was competent to show the state of feeling between the parties.

What we have said disposes of all the questions argued, except that the verdict is contrary to the law and the evidence. As, for the errors pointed out, the judgment must be reversed and the case retried, we will not discuss the evidence, nor express any opinion as to the weight to which it is entitled.—REVERSED.