# CASES

IN THE

# COURT OF APPEALS OF ALABAMA

NOVEMBER TERM 1911-1912

## Humphries *v.* The State.

*Murder.*

(Decided June 13, 1911.  56 So. 72.)

1. *Homicide; Evidence.*—A witness having testified that a pistol was fired during the quarrel between C. and the decedent, and that C. afterwards told the witness that he had fired a pistol, could be asked from what direction the pistol was fired as tending to show it was in fact fired by C.

2. *Same.*—Where there was evidence tending to show that the defendant, after a conspirator not named came to his house, participated in the killing at a later hour of the same night, it was permissible for the state to show that such conspirator was in a room with another defendant when the difficulty started, before going to accused's house.

3. *Same; Threats.*—The accused having been connected with the killing by the testimony, it was admissible to show threats by the accused against the decedent.

4. *Same.*—Where the evidence tended to connect the accused with the killing, evidence of threats by decedent against accused are admissible. whether introduced before or after evidence tending to connect accused with the homicide.

5. *Same; Instructions.*—Section 5362, prohibits the court from charging upon the effect of the testimony unless requested to do so, but a failure to orally instruct as to the different degrees of homicide would have been in contravention of the statute.

6. *Same; Several Degrees.*—It is improper for the court to fail to charge on the several degrees of homicide as not instructing the jury how to determine by their verdict whether the crime was first or second degree murder, as required by section 7087, Code 1907.

7. *Conspiracy; Co-conspirators.*—A charge asserting that unless the defendant fired the fatal shot, or was instrumental in procuring someone else to do so, he should be acquitted, and that unless the jury believed that accused killed the defendant or took part in killing him, they could not convict, was properly refused as requiring an

[Humphries v. The State.]

acquittal if accused did not fire the fatal shot, and did not aid in procuring someone else to do so, although he might have entered into a conspiracy and abetted another conspirator who fired the fatal shot, though not personally present and not actually participating.

8. *Charge of Court; Duty of Jury.*—A charge asserting that it is as much an enforcement of the law to discharge an accused if not proven guilty beyond a reasonable doubt as to convict him if proven guilty beyond a reasonable doubt was properly refused as argumentative and as stating no legal proposition.

9. *Same; Covered by Those Given.*—A court is not required to give charges which are substantially covered in so far as proper by those already given on request.

10. *Appeal and Error; Review; Exceptions.*—A statement in a bill of exceptions that the defendant excepts separately to each part of the oral charge in regard to murder in the second degree, and similar statements in regard to manslaughter in the first and second degrees, while raising the question of the legal correctness of the instructions, does not raise the question of the impropriety of instructing on other degrees of homicide than murder in the first degree.

11. *Same; Estoppel to Allege Error.*—Where, in the manner suggested by the accused, the court excluded incompetent evidence which had been admitted the accused cannot set up error in its admission where he requested no further instructions preventing the jury from considering it.

12. *Evidence; Res Gestae.*—Where the evidence tended to show that one was a co-conspirator with the accused and another in the killing, a declaration made by such co-conspirator before a difficulty between decedent and another conspirator shortly before the killing, that he was going to stay out of decedent's way to keep from having trouble, was self serving and inadmissible.

13. *Same; Hearsay.*—Whether a witness' husband told her that he had heard accused make threats, was hearsay and inadmissible.

14. *Witnesses; Examination; Impeachment.*—A question to a witness on cross examination, "You did not tell anybody there that day at the coroner's jury that you did not know anything about it?" was not so framed as to direct the witness' attention to the person involved in the supposed contradiction, and consequently did not lay a proper predicate for contradicting the witness.

15. *Same.*—A defendant's witness on cross examination may be properly asked whether he did not know that the accused and decedent had had another quarrel about a still, as it did not inquire into details of the difficulty.

16. *Same.*—A question to one whom the evidence tended to show had conspired with the accused and another to kill decedent, as to his failure to say anything about a certain difficulty, although he knew that the brothers of accused were engaged in it and that accused's mother was there and exposed to danger, did not involve an abuse of the latitude allowed on cross examination.

17. *Same.*—Where the state had introduced evidence of threats by accused against the defendant made in a conversation in which ac-

[Humphries v. The State.]

cused stated that decedent stole his still, and that it would never do him any good, and accused denied making such statement, the state could ask him on cross examination if his still was stolen.

18. *Same; Recalling; Examination.*—The court is not bound to permit a second cross examination of a witness recalled for the purpose of raising a predicate for contradicting her, upon matters not bearing upon that purpose.

19. *Trial; Objection to Evidence.*—Where no objection was interposed to the question, a court will not be put in error for failing to exclude the answer.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Rat Humphries was convicted of second degree murder, and he appeals. Affirmed.

The exceptions to evidence are sufficiently noted in the opinion.

The following charges were refused to the defendant: "(1) Unless you believe beyond all reasonable doubt that the defendant fired the fatal shot that took the life of Looney Humphries, or that he was instrumental in procuring some one else to do so, then you should find the defendant not guilty. (2) Gentlemen of the jury, unless you and each of you are convinced by the evidence beyond all reasonable doubt that Rat Humphries shot and killed Looney Humphries, or unless you and each of you are convinced beyond all reasonable doubt that he took part in killing Looney Humphries, then you cannot convict him. (3) Gentlemen of the jury, it is as much an enforcement of the criminal laws of the state of Alabama to discharge the defendant if he is not proven guilty beyond all reasonable doubt as it is to convict him if he is proven guilty beyond all reasonable doubt. (4) The law presumes that the defendant is innocent, and this presumption attends him, as a matter of evidence proven in the case, until the evidence convinces you of his guilt, beyond all reasonable doubt, and it does not matter how suspicious the circumstances against

him may be; if they can be reconciled with his innocence, then you should find the defendant not guilty. (5) Because the evidence may not disclose to the satisfaction of the jury beyond all reasonable doubt that some one else may be guilty in this case, this is no reason for finding the defendant guilty, and it is the defendant alone who is on trial, and, unless the evidence convinces every member of the jury of his guilt beyond all reasonable doubt, the jury should find him not guilty. (6) Regardless of whether George Ingram acted as a natural man or not, if the jury do not believe beyond all reasonable doubt from the evidence that the defendant was guilty, they should acquit him. (7) It does not matter whether George Ingram told Humphries about the trouble at the house of Cicero Humphries, yet, unless the jury believe beyond all reasonable doubt from the evidence that the defendant Rat Humphries was guilty, they should acquit him. (8) It doesn't matter whether the sympathy is with the living or with the dead, if the evidence and the evidence alone does not convince you of the guilt of the defendant beyond all reasonable doubt, you should acquit the defendant. (9) Unless the evidence convinces the jury and every member thereof to a moral certainty that the defendant is guilty to a moral certainty, then you should not find him guilty, although the defendant could have placed other witnesses on the stand and have thrown more light on the conditions. * * * (11) The court charges the jury that there is no evidence of any agreement or conspiracy on the part of the defendant with any one to kill Looney Humphries."

TATE & WALKER, for appellant. If the acts and declarations of a conspirator at or about the time of the assault, illustrative of its character, are admissible, then we insist that the acts and declarations of a conspirator

illustrative of his mental attitude at or about the time of the killing would be competent.—*Blount v. The State,* 49 Ala. 381; *Haynesworth v. The State,* 136 Ala. 13. Counsel discuss other assignments of error relative to evidence, but without citation of authority. Counsel further insist that the court was in error in allowing certain statements to remain in evidence pending the trial, and that the exclusion of such evidence after the trial without unequivocal instructions to the jury not to consider it, was injurious.—*McCurry v. Hooper,* 12 Ala. 823; *Carlisle v. Hundley,* 15 Ala. 623. The court erred in not confining its oral charge to murder in the first or second degree.—*Compton v. The State,* 110 Ala. 36; *Pearson v. The State,* 99 Ala. 148. The court erred in refusing charge 1.—*State v. Cawood,* 2 Stew. 360; *Martin's Case,* 89 Ala. 115; *Turner's Case,* 97 Ala. 57. Counsel discuss the other charges given and refused, but without further citation of authority.

R. C. BRICKELL, Attorney General, and WILLIAM L. MARTIN, Assistant Attorney General, for the State.

WALKER, P. J.—The appellant was joined with Cicero Humphries and George Ingram in an indictment charging them with the murder of Looney Humphries. A severance having been granted, the appellant was tried separately. On the trial there was evidence to warrant an inference that there was a conspiracy to kill the deceased between the three persons named as defendants in the indictment. There was proof to the effect that a difficulty started between the deceased and Cicero Humphries while the two were in adjoining rooms of a house, that George Ingram was in that house at or about the time a shot was fired from the room occupied by Cicero Humphries, and that he went from there to the home of

the defendant, a short distance away, and that the deceased came to his death by a shot fired a short time afterwards from a gun found in the defendant's possession after the killing. There was also evidence tending to show that, prior to the difficulty mentioned, each of the three persons charged with the murder entertained feelings of hostility towards the deceased.

Many exceptions were reserved by the defendant to rulings of the court in the admission and rejection of evidence. Some of the exceptions are palpably without merit. Mention will be made of the rulings which in the argument are claimed to have been erroneous.

Willie Morgan, a witness for the state, having testified that a pistol was fired in the course of the difficulty which started between Cicero Humphries and the deceased, and that Cicero afterwards told the witness that he fired the pistol, he was asked by the solicitor from what direction the gun was fired. In view of the tendencies of the evidence above mentioned, it is plain that the defendant's objection to this question was not well taken. The manifest purpose of the question was to elicit proof that the pistol was in fact fired by Cicero Humphries, and the answer of the witness tended to show that such was the fact.

In connection with the evidence tending to show that the defendant, after George Ingram went to his house, participated in or had some connection with the killing of the deceased later in the night, it was proper to permit the prosecution to introduce evidence tending to show that George Ingram was in the room with Cicero Humphries when the difficulty started, and before he went to the house of the defendant.

The self-serving declaration of George Ingram, made before the difficulty between the deceased and Cicero Humphries started, that he was going to stay out of

deceased's way to keep from having any trouble with him, did not form a part of the res gestae, and was prop· erly excluded.—*Williams v. State,* 105 Ala. 96, 17 South· 86.

The fact that the defendant made threats against the deceased was competent evidence against him. He would have been entitled to have such evidence excluded in the absence of evidence connecting him with the killing.

Error is not to be imputed to the action of the trial court in admitting proof of such threats when, on the trial, there was other evidence connecting the defendant with the commission of the offense charged, whether such connecting evidence was offered before or after the introduction of the proof as to the threats. All the evidence cannot be laid before the court and the jury at the same time.

The court sustained motions made by the defendant to exclude from the jury evidence which had been admitted as to declarations in reference to the matter made by Cicero Humphries after the killing. So it appears that the court adopted the mode suggested by the defendant himself of removing the evidence objected to from the consideration of the jury. If the defendant deemed that anything more was required to prevent the jury taking into consideration the excluded evidence, further instructions on the subject should have been requested.

There was no error in sustaining the objection made by the state to the question propounded by the counsel for defendant on cross examination of the witness John Grimes: "You did not tell anybody there that day at the coroner's jury you did not know anything about it?" The question was not so framed as to serve the purpose of laying a predicate for the contradiction of the witness, as it did not direct the attention of the witness to the

person involved in the supposed contradiction.—*Burton v. State*, 115 Ala. 1, 11, 22 South. 585; Jones on Evidence, § 845.

The defendant did not object to the question asked by the solicitor of the witness Murphy as to the condition of the gun found in the defendant's house. Having speculated on the answer the witness would make to the question, he was not entitled to have the answer excluded after it was made.

The defendant objected to a question asked by the solicitor of the witness Joe Morgan on the ground that there was no testimony tending to show a conspiracy. What has already been said suffices to show that this objection was not well founded in fact.

On cross-examination of Mrs. John Grimes, a witness for the state, the counsel for the defendant asked her if her husband told her that he heard the defendant make some threats. Counsel for the appellant insist in argument that the court was in error in sustaining the objection of the state to this question; but they do not advise the court how such a statement by a third person to the witness could be competent evidence in the case. Plainly the evidence called for was the merest hearsay.

On the cross-examination of George Ingram, examined as a witness for the defendant, he was asked if he did not know that the defendant and the deceased had another quarrel about a still. The defendant objected to this question on the ground that it was going into the particulars of the difficulty and quarrel. The objection was not well founded in fact. The question called merely for the knowledge of the witness as to the fact of there having been another quarrel, one about a still, and did not call for the details of that difficulty or quarrel.

[Humphries v. The State.]

The question propounded by the solicitor, on his cross-examination of George Ingram, as to his failure to say anything to the defendant about the difficulty, though he knew that brothers of the defendant were persons engaged in it, and that defendant's mother was at the scene of the difficulty and possibly exposed to danger thereby, did not involve an abuse of the latitude allowed on cross-examination; and error is not to be imputed to the trial court in overruling defendant's objection to that question.

The court was warranted in sustaining the objection of the solicitor to the question asked the witness George Ingram as to the habit of the defendant of asking the witness how he came to stay at the former's house, because of the leading form of the question, without regard to whether the question was otherwise subject to objection.

After Mrs. John Grimes had been examined as a witness for the state and cross-examined by the counsel for the defendant, and in the midst of the examination of the witnesses for the defense, the court permitted the defendant to recall her for the express purpose of enabling the defendant to lay a predicate for contradicting her testimony. After such predicate had been laid, defendant's counsel asked her, "Had you at that time forgot about what you told here yesterday?" This question had no bearing upon the subject in regard to which the defendant had requested and obtained the permission of the court to recall the witness, and it was not incumbent on the court to permit a second cross-examination of the witness on matters not bearing upon the purpose for which her recall had been permitted. It need not be decided whether the question would have been proper if it had been asked at a different stage of the trial.

[Humphries v. The State.]

Proof having been introduced by the state of threats made by the defendant against the deceased in a conversation in which the defendant stated that the deceased was the man who had stolen his still, and that it would never do him any good, and the defendant, on his examination as a witness, having denied that he made such statement, it was within the limits of legitimate cross-examination for the solicitor to ask him if his still was stolen. The question as to whether or not there had been such a theft would have some bearing in the consideration of the conflicting testimony in reference to statments claimed to have been made by the defendant on the subject.

In the course of the oral charge to the jury, the court instructed them as to the different degrees of homicide. The bill of exceptions states that "the defendant then and there, before the jury retired, excepted separately and severally to each portion of the court's oral charge to the jury in regard to murder in the second degree", and it makes similar statements of exceptions taken to each portion of the charge in regard to manslaughter in the first degree and in regard to manslaughter in the second degree. In the argument made here in support of these exceptions no question is raised as to the correctness of any part of the court's oral charge as a statement of law as to the degree of homicide there dealt with; and the insistence is that the error of the court in that connection was in giving the jury any instruction as to the degrees of homicide other than murder in the first degree, as, it is insisted, that under the evidence, the defendant was guilty of murder in the first degree or of nothing. The exceptions were in such form as to indicate that the purpose was, not to except to the action of the court in instructing the jury as to the different grades of homicide, but to challenge the correct-

ness of the court's statements of the law in regard to the several degrees. If it was the purpose of the defendant to except to the action of the court in charging the jury as to the different degrees of homicide, this purpose should have been plainly disclosed to the court, which was not done by the form of exception adopted.

However, if such an exception had been duly reserved, it would not have been tenable, as a failure of the court in its oral charge to instruct the jury as to the different degrees of homicide would have been in contravention of the statute (Code 1907, § 5362) prohibiting the court to charge upon the effect of the testimony, unless requested to do so by one of the parties and would also have amounted to a disregard of the duty of giving appropriate instructions to enable the jury intelligently to perform the function, imposed upon them by statute (Code, § 7087), of ascertaining, by their verdict, in the event of a conviction, whether the crime committed was murder in the first or second degree.—*Brown v. State,* 109 Ala. 70, 20 South. 103.

Charge 1 requested by the defendant was properly refused. Under that instruction the jury would have been required to acquit the defendant if they found from the evidence that he did not fire the shot that took the life of the deceased and was not instrumental in procuring some one else to do so, though he entered into a conspiracy to do an unlawful act and aided and abetted another conspirator, who solicited and procured the defendant's assistance or co-operation, and who fired the fatal shot.—*Evans v. State,* 109 Ala. 11, 19 South. 535. For like reasons error cannot be imputed to the refusal to give charge 3 requested by the defendant. Under that charge, if it had been given, the jury would have been required to acquit if they believed from the evidence that the defendant did not take part in the act of killing,

though they were satisfied from the evidence beyond a reasonable doubt that the defendant entered into a conspiracy to do an unlawful act, the execution of which made it possible, in the nature of things, that murder might be committed, whether or not the defendant was personally present and participated in the act of killing.

Charge 2 requested by the defendant was merely argumentative, and contained no statement or exposition of any principle of law applicable to the case or any branch or phase of it. The court is not to be put in error for refusing a charge merely admonishing the jury as to their duty, and not asserting a legal proposition applicable to the case.—*Turner v. State,* 160 Ala. 40, 49 South. 828. Besides, it cannot with propriety be said that a criminal law is enforced or put into effect when a defendant is discharged because of a lack of the requisite evidence to support his conviction. The result of such lack of evidence is to make the case one not calling for the enforcement of the criminal law alleged to have been violated. This consideration discloses a fault inhering in the statement made by the charge in question.

The propositions embodied in charge 4 requested by the defendant were fully covered by other instructions given by the court at the request of the defendant, and the court is not to be put in fault for refusing to reiterate propositions already asserted in written charges given at the instance of the defendant.

So far as charge 5 requested by the defendant embodies any proposition of law bearing upon the case, and not mere matters of argument and statements of fact as well known to the jury as to the court, the instruction requested by it was covered by other charges given at the instance of the defendant; and there was no error

[Sanders v. The State.]

in its refusal. A similar criticism applies to charges 6, 7, 8, and 9 requested by the defendant, and there was no error in the refusal to give either of those charges.

A result of the conclusion, already expressed, that there was evidence tending to show that the defendant was a party to a conspiracy to kill the deceased, is that the defendant was not entitled to such an instruction as that embodied in charge 11 requested by him.

Perhaps the length of this opinion is not warranted by the character of the questions involved and considered. A careful consideration of all the questions presented for review has brought the court to the conclusion that there is no error in the record.

Affirmed.