75 So.2d 103

Melvin SPARKS

v.

STATE.

6 Div. 572.

Supreme Court of Alabama.

June 30, 1953.

Rehearing Denied April 22, 1954.

J. H. McGuire, LeMaistre, Clement & Gewin and Perry Hubbard, all of Tuscaloosa, for petitioner.

Si Garrett, Atty. Gen., L. E. Barton, Asst. Atty. Gen., and Thos. M. Haas, of counsel, opposed.

LAWSON, Justice.

Melvin Sparks was convicted in the circuit court of Tuscaloosa County of the offense of assault with intent to murder. The Court of Appeals affirmed the judgment of conviction.

On the petition of Melvin Sparks, we issued writ of certiorari to review the opinion of the Court of Appeals in so far as it is held therein (1) that the trial court did not err in refusing the general affirmative charge requested by Sparks and (2) that the trial court did not err in sustaining the State's objection to a question asked the witness Holly.

 In holding that the trial court did not err in refusing the general affirmative charge requested by the defendant Sparks, the Court of Appeals said in part as follows:

> "The prosecution was not required to prove that the accused had the specific intent to take the life of Holly. If he intended to do him grievous bodily harm and this intent was accompanied with present ability to effect it, this would constitute the offense charged in the indictment. Of course, the assault must have been committed without legal excuse or justification. Smith v. State, 88 Ala. 23, 7 So. 103."

In Smith v. State, 88 Ala. 23, 7 So. 103, cited by the Court of Appeals in support of the statements quoted above, one of the questions presented was whether the trial court erred to a reversal in refusing a written charge requested by the defendant, Smith, which charge was in the following language: "Before the jury can find the defendant guilty, they must believe, beyond a reasonable doubt, that at the time of the firing of the pistol the

defendant had a *specific* intent to murder Henry White." (Emphasis supplied.)

In holding that the refusal of that charge did not constitute reversible error, this court said in part as follows: " * * * The specific intent to take life is not essential. An assault with intent to do grievous harm to the person of another, accompanied with ability to effect it, without legal excuse or sufficient provocation, constitutes the offense. * * *"

The language just quoted from Smith v. State, supra, would appear to justify the statements contained in the opinion of the Court of Appeals with which we are presently concerned.

But the language quoted above from Smith v. State, supra, has been explained and qualified. In so far as that case is authority for the proposition that a charge which requires a *specific* intent to take the life of the person assaulted may be refused without error it is followed. But that case is not followed in so far as it may be said to hold that there can be a conviction for the offense of assault with intent to murder without proof satisfactory to the jury of the existence of an intention to take life. In Walls v. State, 90 Ala. 618, 8 So. 680, after discussing and analyzing the language of the Smith case, supra, Mr. Justice McClellan, writing for the court, said [90 Ala. 618, 8 So. 682]:

"Instructions, therefore, requested by a defendant, which require an acquittal of the felony, unless the jury find from all the evidence in the case that he intended to take the life of the person alleged to have been assaulted, should always be given. If to this form of instruction is added other matter by way of particularizing the necessary intent, as that it must be 'positive,' or 'deliberate,' or 'actual,' or 'specific,' etc., it may well be refused, not because the intent need not be, as matter of abstract law, in a sense positive, deliberate, actual, and specific, but on the ground that the use of these descriptives involves a tendency to mislead the jury. On the

other hand, no charge should be given which would authorize a conviction without proof, satisfactory to the jury, of the existence of an intention to take life, or which would require a conviction on any postulation of facts, although the jury may believe, these facts to the contrary notwithstanding, that the defendant had no actual intention to take the life of the party assaulted, or which declares that no actual intention to take life is necessary. Of this sort were the charges given for the state in the case at bar. They are more than misleading. They are erroneous; and in giving them the trial court fell into error, which is fatal to the judgment rendered."

In Ray v. State, 147 Ala. 5, 41 So. 519, 520, we pointed out that the opinion in Walls v. State, supra, explained and qualified the opinion in Smith v. State, supra:

"The defendant was indicted and tried under section 4346 of the Code of 1896, which provides: 'Any person who commits an assault upon another, with intent to murder,' etc. And in order to convict the defendant it is incumbent upon the state to prove that the assault was committed with the intent to murder; but, like malicious intent in murder, it may be inferred by the jury from the character of the assault, the use of a deadly weapon, and the other attendant circumstances. Walls v. State, 90 Ala. 618, 8 So. 680 (where the case of Smith v. State, 88 Ala. 23, 7 So. 103, is explained and qualified); * * *."

The State concedes the incorrectness of the statements in the opinion here under review to the effect that a conviction under an indictment charging the offense of assault with intent to murder can be had on proof showing no more than that the accused intended to do grievous bodily harm to the assaulted party, provided such intent to do grievous bodily harm is accompanied with present ability to effect such harm.

The State contends, however, that such incorrect statements should not work a

reversal of the judgment of the Court of Appeals because it affirmatively appears in the opinion under review that the Court of Appeals was aware of the correct rule. The State has reference to the two paragraphs which immediately follow the incorrect statements. Those paragraphs read as follows:

> " 'An assault with murderous intent, having the adaptation of apparent means to that end, is the evil aimed at by the statute, *and one may transgress the statute by merely aiming a loaded gun at another,* having a murderous intent.' Dobbins v. State, 15 Ala.App. 166, 72 So. 692, 693.

> "See also, Newton v. State, 92 Ala. 33, 9 So. 404; Crawford v. State, 86 Ala. 16, 5 So. 651; Christian v. State, 133 Ala. 109, 32 So. 64." (Emphasis supplied.)

We do not agree. When considered in connection with the cases which are cited immediately thereafter, we are inclined to the view that the quotation from Dobbins v. State, supra, was inserted primarily because of that part of the quotation which we have italicized above. In any event, we cannot say that the incorrect statements were placed in the opinion under review merely as filler and had no influence on the Court in reaching its conclusion that the defendant Sparks was not entitled to the general affirmative charge as requested by him. Such statements were not irrelevant to the issue but related directly thereto.

We come now to consider the second question, the holding of the Court of Appeals that the trial court did not err to a reversal in sustaining the State's objection to a question asked the State's witness Joe Holly on cross-examination by counsel for Sparks. Joe Holly is the alleged assaulted party.

█ In order to obtain a better understanding of the ruling of the trial court with which the Court of Appeals was concerned, we have gone to the record, as we are permitted to do for that purpose. Sin-clair Refining Co. v. Robertson, 247 Ala. 260, 23 So.2d 872; Mutual Sav. Life Ins. Co. v. Osborne, 247 Ala. 252, 23 So.2d 867; John E. Ballenger Const. Co. v. Joe F. Walters Const. Co., 236 Ala. 546, 184 So. 273; Southern Building & Loan Ass'n v. Holmes, 227 Ala. 1, 149 So. 861.

During the cross-examination of Joe Holly the following occurred:

"Q. Do you recall making a statement to Mr. Thrower to this effect, 'Mr. Sparks didn't hit me.'

"Mr. deGraffenreid [of counsel for the State]: We object.

"The Court: Overruled.

"Mr. deGraffenreid: There is no time or place shown, and the man is not properly identified.

"The Court: I guess you had better limit it.

"Q. After this came up, after it happened, do you recall making a statement to Mr. Thrower to this effect, 'Mr. Sparks didn't hit me, it was Frank Sailors that tore my head up.'

"Mr. deGraffenreid: We object.

"The Court: Sustained.

"Q. At your apartment, at your home, after this fracas came up and you were talking about the trouble you had down there and talking about the injuries to your head, do you recall making a statement to Mr. Thrower to this effect, 'Mr. Sparks didn't hit me,' that it was Frank Sailors that tore my head up and hit me?

"Mr. deGraffenreid: We object it is still not properly identifying the man, he could been any Thrower, it is not shown who he was.

"The Court: I sustain on the grounds that they haven't shown the time.

"Mr. Marshall [counsel for defendant]: We except."

Exception was taken only to the last ruling, so evidently it is of that ruling that the

Court of Appeals said in its opinion as follows:

"Appellant's counsel attempted to lay a predicate by asking Holly if he did not make a statement to Mr. Thrower at the home of the witness. The predicate was not complete. The time was not indicated, nor did it include the inquiry if other parties were present. The court did not err in sustaining the State's objection to the question. Brown v. State, 27 Ala. App. 32, 165 So. 405; Nichols v. State, 27 Ala.App. 435, 173 So. 652."

The "predicate" to which the Court of Appeals referred is evidently that to be laid for the purpose of impeaching a witness. The cases cited by the Court of Appeals refer to such a predicate.

The Court of Appeals evidently construed Holly's testimony on direct examination as indicating that the defendant hit him and that the purpose of the question to which objection was sustained and exception taken was to impeach Holly by showing that he had made a contrary statement out of court. We have some doubt as to whether Holly's testimony on direct shows that Sparks hit him, but we do not feel that on this review we can say that the Court of Appeals could not have so found. So we will treat the questions here involved on the theory that the jury could have found from Holly's testimony on direct examination that he was hit by the defendant, Sparks.

█ The rule is well settled that where a witness on cross-examination denies that he made a statement out of court contrary to his testimony on direct examination, it cannot be shown by an impeaching witness over proper objection that the witness to be impeached did make such a statement out of court unless on cross-examination of the witness to be impeached his attention was called with reasonable certainty to the time, place, circumstances, persons involved, and the statement alleged to have been made by him out of court. Pittman v. Calhoun, 231 Ala. 460, 165 So. 391; Walker v. State, 220 Ala. 544, 126 So. 848; Peoples Shoe Co.

v. Skally, 196 Ala. 349, 71 So. 719; Burton v. State, 115 Ala. 1, 22 So. 585; Southern R. Co. v. Williams, 113 Ala. 620, 21 So. 328; Hester v. State, 103 Ala. 83, 15 So. 857; Nelson v. Iverson, 24 Ala. 9; Powell v. State, 19 Ala. 577; Carlisle v. Hunley, 15 Ala. 623. The reason for the rule has been said to be to enable the faculties of the mind of the witness to be impeached to be put in motion and his memory aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject matter of inquiry, Nelson v. Iverson, supra; that the witness to be impeached may not be taken by surprise and may have it in his power to explain the apparent contradiction, Powell v. State, supra; Peoples Shoe Co. v. Skally, supra.

But we are confronted here with an entirely different question from that treated in the cases cited in the preceding paragraph. Here the objection was sustained not when an impeaching witness was being examined, but on the cross-examination of a witness.

The petitioner, Sparks, through his counsel argues that the question does not arise as to whether a proper foundation has been laid to show that a witness has made contradictory statements until an effort is made to contradict him by showing by another witness that he has made such statements, and if such effort be made, it is then that the impeaching question is subject to objection if the proper predicate or foundation has not been laid.

Only two Alabama cases are cited by petitioner and neither of them, in our opinion, support the proposition for which they are cited.

In Owens v. State, 21 Ala.App. 321, 322, 108 So. 654, 655, which was a bastardy proceeding, the prosecutrix testified on direct examination that "no one else ever had intercourse with me". In holding that the trial court erred in not permitting the defendant to cross-examine the prosecutrix on such portion of her testimony, the Court of Appeals said in part as follows:

"The defendant had the right to inquire of the prosecutrix if she had not

had sexual intercourse with other *named parties, given the time and place,* and which were fixed within the period of gestation, and, upon her denial, it was competent to prove as a fact the sexual intercourse inquired about." (Emphasis supplied.)

In Sowell v. State, 30 Ala.App. 18, 20–21, 199 So. 900, 902, the Court of Appeals in reversing the trial court said in part as follows:

"Upon further cross-examination by the defendant's counsel, the daughter of deceased (wife of defendant) was asked, by way of impeachment of her testimony upon trial as to the fatal difficulty, if she had not made previous contradictory statements, such as, 'Daddy didn't have any business down there jumping on Cecil like he did.' Such a question and others of like character were, if for no other purpose, proper to test the credibility of said witness regarding her testimony on direct examination, wherein she asserted the faultless conduct of her father, the deceased, in the fatal affray."

Examination of the original transcript in the Sowell case, supra, discloses that the State's objections to such questions were not sustained on the theory that the questions did not sufficiently inform the witness of time, place, circumstances, and persons involved, and the statement alleged to have been made. On the other hand, it appears that the questions were so framed as to include those matters.

The case of State v. Bysong, 112 Iowa 419, 84 N.W. 505, cited by petitioner, seems to support his contention, as does the case of State v. Dunn, 161 La. 532, 109 So. 56.

While the writer is impressed with the reasoning upon which the holdings of the Louisiana and Iowa cases were based, we are concerned here with the rule in Alabama and the appellate courts of this state have taken a contrary view. In a number of cases the Court of Appeals has held in effect that a witness cannot be interrogated on cross-examination as to statements made out of court contrary to his direct testimony unless he is informed of time, place, circumstances, persons involved and the statement inquired about. Nichols v. State, 27 Ala.App. 435, 173 So. 652; King v. State, 24 Ala.App. 267, 134 So. 133; Sullivan v. State, 22 Ala.App. 140, 114 So. 73; Drummond v. State, 20 Ala.App. 286, 102 So. 723; Valentine v. State, 19 Ala.App. 510, 98 So. 483; Nalls v. State, 19 Ala.App. 146, 95 So. 591; Kirk v. State, 14 Ala.App. 44, 70 So. 990; Humphries v. State, 2 Ala.App. 1, 56 So. 72.

In the early case of Lewis v. Post & Main, 1 Ala. 65, 73, this court said in part as follows:

"The exception to the decision of the Circuit Court, that this witness should be permitted, when he was asked if he had not made other statements than the one to which he then deposed, to inquire as to the particular time or transaction to which the question related, is free from error. We have before adverted to the decision of the English Judges in the Queen's case. The rule then settled is most salutary, and its object is to prevent a witness from being discredited on account of a contradiction in statements made by him, which may be compatible with the strictest veracity. It is obvious that a mere general interrogatory to the witness, whether he had ever made statements different from that sworn to, would in most instances be nothing more than asking him to discredit himself; this, the law will not allow, and if the object of the defendant was to show that he had made other statements, the witness was entitled to know when and to whom they were made, in order that he might, if he could give a satisfactory explanation."

Our case of Bigham v. State, 203 Ala. 162, 82 So. 192, is in accord with the holding in Lewis v. Post & Main, supra.

We hold, therefore, that the Court of Appeals was correct in holding in effect that on the cross-examination of a witness as to statements made out of court contrary

to the witness' testimony on direct, objections may be properly sustained unless the witness being cross-examined. is informed of the time, place, circumstances, persons involved and statement alleged to have been made.

The next question presented is whether or not the question to the witness Holly to which objection was sustained and exception taken to the trial court's ruling sufficiently informed the witness Holly of those matters.

As we have heretofore shown, the rule is satisfied when the attention of the witness is called with reasonable certainty to those matters. Nelson v. Iverson, supra.

■ The Court of Appeals seems to have held that the proper predicate was not laid for two reasons, (1) the time of the making of the statement was not sufficiently shown; (2) nor did the question propounded to the witness inform him of the person involved.

We are of the opinion that since the witness was asked as to whether he made the statement inquired about to Mr. Thrower, the witness was sufficiently informed of the person involved. Moore v. Jones, 13 Ala. 296; Nelson v. Iverson, supra.

In regard to the time of the statement inquired about, the witness was asked whether or not he did not make the statement at his home "after this fracas came up and you were talking about the trouble you had down there and talking about the injuries to your head." The difficulty occurred on November 22, 1951, and the cause was tried on February 19, 1952. Under the holdings of this court in Moore v. Jones, supra, and Nelson v. Iverson, supra, we are of the opinion that the question called to the attention of the witness with reasonable certainty the time of the making of the statement about which he was interrogated.

We conclude, therefore, that the Court of Appeals erred in holding that the objection of the State to the question propounded the witness Holly on cross-examination was properly sustained.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for further proceedings.

Reversed and remanded.

All the Justices concur.