165 So. 405

### BROWN v. STATE.
### 6 Div. 854.

Court of Appeals of Alabama.
Jan. 21, 1936.

A. A. Carmichael, Atty. Gen., and George Lewis Bailes, Sol., and Robt. G. Tate, Deputy Sol., both of Birmingham, for the State.

RICE, Judge.

Appellant was tried under an indictment charging murder in the first degree, for the killing of Denison Ledyard. The means by which the deceased was killed is charged by the first count to have been by "kicking him," and by the second count "by means unknown to the grand jury." The verdict was for manslaughter in the first degree, fixing the punishment at five years in the penitentiary.

This record discloses a murder which, for stark brutality, is scarcely to be exceeded in the grim annals of crime. Aside from a multiplicity of contusions and abrasions about the arms and limbs and other parts of the deceased's body below, his face and head were revoltingly bruised and mutilated. Both eyes were closed, a collection of blood under the scalp extended down into the neck, and the skull was fractured almost across the forehead. Death, attributed to this fracture and a cerebral hemorrhage, occurred some thirty-six hours after the infliction of the injuries.

Ledyard, the deceased, was placed under arrest by a police officer. Just where the arrest was made is not certain, but apparently on a public street in the city of Birmingham. He was docketed at the city jail, at 3:45 in the afternoon, on a charge of drunkenness, and was lodged in what is termed as the "drunk cell." His condition with respect to the extent of intoxication is not made to appear. The officers testified merely that he was intoxicated, or had been drinking. There is nothing in the evidence which would refute the charge that he was, on the particular occasion, intoxicated in some degree, except for a bare inference afforded by the testimony of his mother to the effect that her son (at the time of his death almost forty years of age) had in youth suffered spinal meningitis which had left him "quite unsteady on his feet." However this may be, Ledyard was locked in the "drunk cell" of the prison with two other men charged with intoxication. Some two hours later the patrol arrived with two more prisoners, both drunk. These were Sam Brown (appellant) and Tom Cooper. Both were locked in the "drunk cell," making a total of five, in a room some twelve or fourteen feet wide by twenty feet long (the floor and walls of which were cement), and equipped with concrete benches made onto and running along the walls. Brown and Cooper were picked up separately. Both it seems had been in fights, if not at the time of, then shortly prior to, their arrest. But it appears fairly certain that the five prisoners were total strangers to one another.

Within the space of one hour or less the assistant warden on duty in the office—McNeel by name—was notified that a fight was going on in the "drunk cell." This word was brought by the "key boy," a negro "trusty." McNeel testified that upon reaching the scene of the shambles he found Ledyard lying on the floor, with defendant, Brown, on his knees and bending over with his hands on Ledyard. Otherwise the fight was over. At this time there were in the cell only four prisoners—Ledyard, Brown, Cooper, and one Bradley—the fifth having been released before the fight started. McNeel testified further that Brown, upon being then asked what the matter was, stated that "they jumped on him and he beat hell out of both of them." Officer Wilson, superintendent of the city jail, testified that Brown had made a similar statement to him.

Of the four persons shown to have participated in or been present at the fight, only two testified, Tom Cooper testifying as a witness for the state, and the defendant, Brown, testifying in his own behalf. Ledyard was dead, and Bradley is not shown to have testified. Cooper testified that soon after he and Brown were placed in the "drunk cell" the latter got up from where he was sitting and, without

provocation or warning, struck witness in the face after which he proceeded to where Ledyard was lying on the floor and kicked him several times in the face with the heel or side of his shoe; that Ledyard tried to get up whereupon defendant kicked him again; kicked his head straight down on the floor—what witness would call "stomping." He further testified that defendant, after thus kicking deceased several times, again attacked the witness, knocking his head against the wall; that a wound in his scalp resulting from this, and a bruise in the eye inflicted when defendant struck him were the only injuries witness sustained in the melee; and that his other injuries—a broken wrist and injured knee cap—had already been received by him, as the result of a fall, when he was arrested.

Defendant, Brown, testified that Cooper was the aggressor in the fight; that when the two were en route to jail in the police patrol Cooper had tried to start a fight with him, and soon after they were placed in the cell, witness then ,having removed his shoes and lain down on one of the benches, Cooper arose, knocked Ledyard down, and then advanced upon and attacked the witness. He testified to a more or less fierce fight between himself and Cooper, with Cooper taking time out intermittently to ,strike Ledyard; and that the last time Cooper struck Ledyard he fell against one of the cement seats and rolled over on the floor. Defendant denied striking or kicking Ledyard, admitting only that when, during his fight with Cooper, Ledyard would clutch at his legs he would push him away with his sock feet. He testified that Cooper was entirely uninjured when he came into the cell, but received all his injuries in the fight. It appears from his own evidence and otherwise that defendant's face was injured and bruised and his hands—fingers and knuckles—bruised and abraded.

■ There was sharp conflict between the evidence of Cooper and that of defendant—the only two eyewitnesses—as to the quo modo of Ledyard's fatal injuries, and as to who was the responsible agent. Upon the jury, and the jury alone, devolves the duty of reconciling such conflicting evidence. The affirmative charge in such circumstances is inapt, and the trial court committed no error in refusing requested charges, instructing against a verdict of manslaughter in either degree.

■ By his own testimony defendant denied any intention on his part to injure Ledyard and denied positively that he did inflict the fatal injuries. The whole evidence discloses no facts upon which defendant might legally predicate a claim that the killing was done in self-defense. The sole controverted issue was whether defendant or Cooper perpetrated the crime. In these circumstances, charges dealing with the law of self-defense were abstract. Therefore, the trial court committed no error in omitting any reference to self-defense from his oral charge and in refusing defendant's written requested charges on the subject. Lundsford v. State, 2 Ala. App. 38, 56 So. 89.

■ Appellant argues that error infected the oral charge of the court. The bill of exceptions recites:

"By defendant: We except to that portion of the court's oral charge as follows," setting out the language objected to.

It has long been the rule in this state that an exception to the oral charge must be reserved before the jury retires, and the fact that an exception was so seasonably taken must affirmatively appear from the bill of exceptions. Sovereign Camp, W. O. W., v. Gay, 217 Ala. 543, 117 So. 78, and cases there cited. Applying the further rule that the bill of exceptions must be construed more strongly against the appellant (Sovereign Camp v. Gay, supra), we must hold that the quoted recital does not affirmatively show that the exception was seasonably reserved, and that it is insufficient as a reservation of the question for review on appeal. Moreover, considering the excerpt in question in the light of and in connection with the charge as a whole, we find the same not subject to the objection.

■ Defendant was allowed to show by the police officer who arrested Ledyard that, after the arrest, he carried Ledyard to the house of one Porter who made complaint in the presence of Ledyard about some act committed at her house; but the court sustained an objection to a question asking the witness "to tell what that was." This ruling of the court was without error. A question calling for a statement by a person about the defendant's conduct is objectionable as hearsay when propounded to a witness other than the person making the statement. Kirklin

v. State, 168 Ala. 83, 53 So. 253; Dickens v. Murray & Peppers, 163 Ala. 556, 50 So. 1019.

Appellant argues for error in several rulings on the admission of evidence designed to impeach the state's chief witnesses in the case. It is not necessary, nor would it be profitable to treat these questions separately and in detail; all are subject to the same infirmity, in that in neither instance was a proper predicate laid.

"In order to impeach a witness by contradictory statements, a predicate is required to prevent surprise and give the witness an opportunity to explain. If the attention of the witness is called to the time and place, circumstances and persons involved, and the statements made, the rule is satisfied." Bigham v. State, 203 Ala. 162, 82 So. 192, 194.

We have endeavored to discharge the full duty enjoined upon us by the statute, by considering the entire record and examining each and every question raised, whether or not argued in brief; and we have here treated every question meriting separate treatment. We have found no error of prejudice. If the theory of the state, as advanced by the evidence introduced in its behalf, is to be accepted, defendant was guilty of an atrocious crime. By its verdict, the jury accepted that theory, but the punishment imposed was quite moderate, manifesting, perhaps, a thought of the nature of that engendered in the minds of this court. We deem it not improper to observe that, if not already remedied, some drastic corrective is indicated for the penal system which permitted as many as five prisoners, all charged with drunkenness, some in an advanced state of intoxication, and some fresh from fistic encounters, to be herded together in one small cell, and left to their own devices and to the mercy of each other; a system that furnished the occasion for a crime which, without it, would not have occurred, and allowed a citizen confined for safe-keeping to be brutally done to death within the arms of the law.

No error appearing, the judgment of the circuit court is due to be affirmed. And it is so ordered.

Affirmed.