103 So.2d 158

**Willie J. HAWKINS, alias,**

**v.**

**STATE of Alabama.**

**6 Div. 959.**

Supreme Court of Alabama.

March 20, 1958.

Rehearing Denied June 12, 1958.

John Patterson, Atty. Gen., Paul T. Gish, Jr., and Wm. C. Younger, Asst. Attys. Gen., for the State.

A. K. Callahan, Jas. Douglas Buck, Samuel A. Beatty and Jos. G. Burns, Tuscaloosa, for appellant.

520

LAWSON, Justice.

This case was submitted on briefs without oral argument. At the time of submission it was assigned to another Justice. It was reassigned to the writer of this opinion on February 3, 1958.

The appellant seems to have been known by several names, but he will be referred to here as Willie Hawkins or as Hawkins. He appeals from a judgment of conviction of murder in the first degree with infliction of the death penalty. The appeal is under the automatic appeal statute. Act 249, Acts 1943, p. 217, approved June 24, 1943. See 1955 Cum. Pocket Part, Vol. 4, Code 1940, Title 15, § 382(1) et seq.

James Clell Langford, a police officer of the City of Tuscaloosa, was shot to death on the night of May 14, 1954. The shooting took place at the Twilight Club, a negro night club to which Langford and another police officer had been sent to quell a disturbance.

Hawkins fled after the shooting. He was indicted by a grand jury of Tuscaloosa County on May 15, 1954, for the first degree murder of Langford. He was apprehended in a distant state within a short time after the killing and was returned to this state. Hawkins was unable to employ counsel, so prior to arraignment and on June 4, 1954, the trial court appointed two experienced, reputable practicing attorneys of the Tuscaloosa County Bar to represent him. § 318, Title 15, Code 1940, as amended.

On June 16, 1954, Dr. J. S. Tarwater, acting under the provisions of § 425, Title 15, Code 1940, submitted a written report to the judges of the Circuit Court of Tuscaloosa County, wherein he stated in part that "there is reasonable ground to believe that said defendant, Willie Hawkins, was insane at the time of commission of such offense or presently" and wherein he requested that Hawkins be committed to Searcy Hospital at Mt. Vernon "to be examined and observed by myself as superintendent of the Alabama State Hospitals, and two members of the Searcy Hospital Medical Staff to constitute a commission on lunacy with view of determining mental condition of defendant, Willie Hawkins, and the existence of any mental disease or defects which would affect his present criminal responsibility, or his criminal responsibility at the time of the commission of the crime with which defendant is charged."

On the same day that Dr. Tarwater made his report one of the judges of the Circuit Court of Tuscaloosa County, acting in accordance with the provisions of § 425, Title 15, supra, made and entered an order wherein the sheriff was directed to deliver Hawkins to the superintendent of the Alabama State Hospitals for the insane and the said superintendent was ordered to place Hawkins "under observation and examination of himself and two members of his medical staff, to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of said defendant, said Willie Hawkins, alias, and the extent of any mental disease or defect which would affect his criminal responsibility presently or his criminal responsibility at the time of the commission of the crime." The commission on lunacy was ordered to make a full written report to the clerk of the circuit court of Tuscaloosa County as soon as it reached a conclusion as to the mental condition of Hawkins.

Dr. Tarwater named Dr. Harry S. Rowe and Dr. W. L. Heard, both members of his staff, to serve with him on the lunacy commission. Hawkins was admitted to Searcy Hospital on June 16, 1954. Searcy is a state institution for the colored in-

sane located at Mt. Vernon. Hawkins remained in Searcy Hospital until his escape on December 17, 1954.

Hawkins was returned to Tuscaloosa County, Alabama, shortly after he was apprehended in Detroit, Michigan, on or about July 18, 1955. He was not returned to Searcy Hospital prior to July 29, 1955, the day on which the three members of the lunacy commission executed and signed their report, which was filed in the office of the clerk of the circuit court of Tuscaloosa County on August 4, 1955.

The report of the lunacy commission reads, in part, as follows:

"* * * After having the said Willie Hawkins under our study and observation continually from the date of admission [June 16, 1954] until December 17, 1954, the date of his escape from Searcy Hospital, we desire to submit the following report:

"After full study and a long period of observation, it is the opinion of each of us separately, and our opinion jointly and collectively, that the said Willie Hawkins, alias, was insane and incompetent at the time of his elopement from Searcy Hospital December 17, 1954. It is our opinion that he was insane and incompetent at the time of his admission in Searcy Hospital. It is our further opinion that he was insane and incompetent at the time of the commission of the crime for which he is charged.

"* * * There is evidence of a fantasy type of thinking, a flattened mood or feeling, disturbance in thinking and reason, lack of insight or understanding, and because of his disturbed emotional and reasoning state inability to adhere to the right, even though he does know the difference between right and wrong. The commission further feels that Willie Hawkins, alias, is a menace to society, that he is suffering from a chronic and long standing mental disease, and that for his own welfare and the welfare of others he should be confined for safe-keeping. It is our further feeling that Willie Hawkins is not mentally capable of participating or helping in his own defense.

"It is the understanding of the commission that Willie Hawkins has recently been taken into custody by the law. If it please the Court further study will be made by the commission if he is returned to Searcy Hospital. Should he not be returned to the Searcy Hospital for further study, this report will be the final report of the commission and we will consider our obligation and that of the Alabama State Hospitals (Searcy Hospital) as discharged."

■ The defendant was not returned to the hospital at Mt. Vernon pending his arraignment on September 3, 1955. His court-appointed counsel were present at arraignment and made no objection to going to trial. They did not ask that the defendant be returned to Mt. Vernon nor did they request that a jury be impaneled to inquire into the "present" sanity of the defendant, as provided by § 426, Title 15, Code 1940. There was no insistence made to the effect that the report of the lunacy commission made it mandatory upon the trial judge to order the defendant returned to Mt. Vernon, there to remain until the lunacy commission found him to be "presently sane." Upon his arraignment the defendant interposed the pleas of not guilty and not guilty by reason of insanity. Under these pleas the "present" sanity of the defendant was not an issue. See Ex parte Lee, 248 Ala. 246, 27 So.2d 147; Jones v. State, 13 Ala. 153; United States v. Chisholm, C.C., 153 F. 808.

The trial began on September 14, 1955, and was concluded on September 16, 1955, on which day the defendant was sentenced to death in accord with the jury verdict. That sentence was, of course, suspended pending the appeal to this court. The de-

fendant's motion for new trial, which was timely filed, was overruled on November 8, 1955.

The State rested after presenting evidence showing the circumstances under which Langford met his death and evidence going to show that Hawkins was the killer. The defendant offered no testimony for the purpose of refuting the State's evidence, but rested his case after placing in evidence the depositions of Doctors Tarwater, Rowe and Heard, each of whom gave evidence to the effect that Hawkins was insane at the time of the commission of the offense and at the time of trial. In rebuttal the State offered testimony of expert and non-expert witnesses bearing on the mental status of the defendant.

Counsel for appellant strenuously insist that upon the filing of the report of the lunacy commission showing that the members of that commission were of the opinion that Hawkins was "not mentally capable of participating or helping in his own defense" the State should not have been permitted to put the defendant to trial and the trial court erred to reversal in allowing the case to be tried until after Hawkins had been recommitted for further observation by the lunacy commission and until after that commission had made and filed a report showing the defendant to be "presently" sane.

In support of that insistence the appellant relies upon the opinion of the Court of Appeals rendered on rehearing in the case of Benton v. State, 31 Ala.App. 338, 18 So.2d 423, and our case of Hunt v. State, 248 Ala. 217, 27 So.2d 186. The Hunt case, supra, contains no language which supports appellant's contention. But the opinion of the Court of Appeals on rehearing in the Benton case, supra, does contain such language. We quote. from that opinion [31 Ala.App. 338, 18 So. 427]:

"Title 15, Section 425, Code 1940, provides the machinery for a preliminary investigation or inquisition of the sanity of one charged with a capital offense before that issue is submitted to a jury and the trial of the cause under a special plea. When it is made known to the court that there is reasonable ground for believing the defendant insane either at the time of the commission of the offense, or presently, this statute operates to suspend the right of the state, pro tempore, to proceed with the prosecution of the offense. An insane person cannot, and ought not, be put to trial. To do so would make a mockery of justice. The instant statute is designed to prevent such result. It is only after the commission of lunacy, made up of the Superintendent of the Alabama Insane Hospitals and two members of his medical staff, has made its written report, finding the defendant to be presently sane that the State may proceed with the trial. On a coming in of the report of the lunacy commission the statute requires that the same shall be filed with the clerk of the court and be accessible to the judge presiding, to the solicitor and to counsel for defendant. When the report is filed, the trial begins (if the defendant is presently sane) and the statute has served its purpose and no longer influences the procedure."

The question to which the Court of Appeals was writing on rehearing in the Benton case was whether the trial court erred in refusing to admit in evidence the report of the lunacy commission. Under the facts of that case there was no question before the court as to the effect of the lunacy commission report finding the accused to be "presently" insane, for Benton was found by the lunacy commission to be presently sane.

The Benton case came to this court on certiorari. Benton v. State, 245 Ala. 625, 18 So.2d 428. We approved the rule announced by the Court of Appeals to the effect that a report of a lunacy commission is not admissible into evidence. But we did not give consideration to the dictum in

the opinion of the Court of Appeals delivered on rehearing to the effect that a lunacy report showing the accused to be presently insane operates as a bar to trial.

A holding that a finding of "present insanity" by a lunacy commission appointed under § 425, Title 15, supra, is not a bar to prosecution is implicit in our case of Ex parte Lee, 248 Ala. 246, 27 So.2d 147. In that case an inquisition as to the sanity of the accused was tried before a jury under the provisions of § 426, Title 15, supra, on July 20, 1942. The jury found the accused to be presently sane. Thereafter, on July 21, 1943, a lunacy commission appointed under the provisions of § 425, Title 15, supra, filed its report wherein it was shown that the members of the commission entertained the opinion that the accused was insane prior to and at the time of the commission of the offense with which he was charged and also that he was insane at the time the report was made. In spite of that report, the accused was arraigned on October 21, 1943, at which time he pleaded not guilty, not guilty by reason of insanity and not guilty by reason of insanity at the time of the commission of the offense. The trial resulted in a judgment of conviction. We affirmed. Lee v. State, 246 Ala. 343, 20 So.2d 471. In Ex parte Lee, 248 Ala. 246, 27 So.2d 147, we refused to set aside that judgment on the ground that the accused had been insane at the time of the trial. Although we did not expressly say that the finding of the lunacy commission to the effect that the accused was presently insane was merely directory and not binding on the trial court, that holding is implicit in the opinion.

■ It is expressly provided in § 426, Title 15, supra, that if the jury find that the accused is insane, the court must make an order committing him to the Alabama State Hospitals, where he must remain until he is restored to his right mind. No such provision is contained in § 425, Title 15, supra, and we hold that the report of the lunacy commission as to the mental status of the defendant at the time of the

trial is no more binding on the trial court than a finding to the effect that the accused was insane at time of the commission of the crime.

■ Under the circumstances of this case we do not think the trial judge can be said to have acted arbitrarily in permitting the accused to be put to trial in spite of the opinion expressed in the lunacy report to the effect that Hawkins was not mentally capable of participating or helping in his own defense. As we have heretofore shown, that report was not binding on the trial judge. The legislature did not so provide.

The report of the lunacy commission was executed on July 29, 1955, which was more than seven months after the members of the commission had seen Hawkins and the record shows that no diagnosis was made while he was confined in the mental institution at Mt. Vernon. On the other hand, a doctor who examined Hawkins shortly before trial for the purpose of ascertaining his then mental state expressed the opinion that he was sane. Several lay witnesses testified to the same effect.

Whether experts in the field of mental disease should have the final authority to determine the sanity of an accused, and whether the legislature can so provide are not questions presently before us.

■ The trial court did not err in refusing to admit into evidence the report of the lunacy commission and in not permitting counsel for appellant to refer to that report in their opening remarks to the jury. Benton v. State, 245 Ala. 625, 18 So.2d 428. Moreover, the record shows that although the report was not formally received in evidence, it was permitted to be taken into the jury room for the jury's consideration.

■ The defense of not guilty by reason of insanity must be "clearly proved to the reasonable satisfaction of the jury" and the burden is on the defendant to do so. §.422, Title 15, Code 1940; Smarr v. State, 260 Ala. 30, 68 So.2d 6; Lakey v. State, 258

Ala. 116, 61 So.2d 117; Lee v. State, 246 Ala. 343, 20 So.2d 471; Boyle v. State, 229 Ala. 212, 154 So. 575.

█ The rule is fully settled that opinion evidence even of experts and in insanity cases is to be weighed by the jury and its probative force in overcoming the presumption of sanity, as a rule, is for them. Boyle v. State, supra, and cases cited; Lee v. State, 246 Ala. 343, 20 So.2d 471.

As we have shown, the State's evidence rebutting the evidence offered by Hawkins as to his insanity consisted of both expert and non-expert witnesses and there was evidence offered by the State going to show that at least one of defendant's expert witnesses had expressed an opinion inconsistent and in conflict with his testimony concerning Hawkins' mental condition.

█ The verdict of the jury indicates that the appellant, Hawkins, failed to establish his plea of insanity to the satisfaction of the jury. We cannot say their verdict was unwarranted, even though it was the opinion of the outstanding expert witnesses that appellant was insane at the time of the commission of the offense. Lee v. State, 246 Ala. 343, 20 So.2d 471.

█ Incriminating remarks made by the defendant to law enforcement officers were introduced without error. There was no denial of the preliminary proof that there was no reward or inducement offered or threats made and that the statements were entirely voluntary. Pilley v. State, 247 Ala. 523, 25 So.2d 57, and cases cited.

█ The appellant contends that the judgment should be reversed because the bailiff "illegally contacted" members of the jury after the case went to the jury and before the verdict was reported. This question was raised on motion for new trial. At the hearing on that motion the State introduced affidavits from all of the members of the jury tending to show that their communication with the bailiff was as outlined hereafter. The jury reached its verdict and reported that fact to the bailiff. They were told by the bailiff that the judge and the lawyers were not in the court room and would have to be found before the verdict could be reported. The foreman of the jury suggested that the pay certificates of the jurors be prepared so that the jury could leave the court house immediately upon reporting the verdict. The bailiff relocked the door and returned within a few minutes with the pay certificates. At that time the jury was told that it could report its verdict and it did so. We can see no possible injury to the defendant because of the circumstances outlined above and we are of the opinion that the trial court did not err in overruling the motion for a new trial.

█ There were a number of exhibits which were introduced by the State and the defendant which are not in the transcript and which have not been certified to this court. The transcript identifies the exhibits sufficiently for us to ascertain that those introduced by the State were admitted without error. All of those exhibits bear on the question as to whether Hawkins fired the shot which killed Langford. Since there is no dispute here as to that question, we do not think the absence of the exhibits to be material.

Consonant with our duty, we have carefully examined the entire record for error, whether pressed upon our attention or not. We have dealt herein with all questions which we think require consideration. We find no reversible error in the record and the cause is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.