123 So.2d 193

Herbert Eugene **WILCUTT**

v.

**STATE.**

6 Div. 702.

Court of Appeals of Alabama.

April 5, 1960.

Rehearing Denied June 30, 1960.

Rogers, Howard & Redden and Wm. H. Mills, Birmingham, for appellant.

28

MacDonald Gallion, Atty. Gen., and Jas. W. Webb, Asst. Atty. Gen., for the State.

PRICE, Judge.

The indictment, in three counts, charged the violation of Section 123, Title 14, Code 1940. The trial resulted in defendant's conviction, and he appeals.

The state's evidence tended to show that about ten o'clock on the night of July 17, 1958, an explosion occurred at the home of William Blackwell, Jr., in the Fountain Heights section of Birmingham. Considerable damage resulted to the house, in which were Blackwell and his family at the time. Just prior to the explosion Ernest Coppins, who lived across the street from Blackwell, saw four white men on the street near Blackwell's home and later saw four men at his own fence corner, lighting something with a match. One of the men came to his gate with something smoking in his hand. Coppins yelled and the men left. A short time thereafter the explosion occurred. None of the men were identified.

Shortly after the explosion police officers found Cranford Neal and Ellis Houston Lee huddled together in a nearby alley. They had been beaten and were cut and bleeding. A large group of Negroes were around them. After Neal and Lee were taken to the police station defendant was picked up at his home. He first told the officers he had placed the bomb on Blackwell's front porch, but on further questioning he denied going to the Blackwell house, and stated the only reason he had said he went there was to take some of the pressure off his two companions, Neal and Lee. Later, in a written statement, defendant stated that he had made a bomb from eight sticks of dynamite which he had found; that on the night of July 17, defendant, Neal and Lee had driven to 11th Street and 12th Avenue North in defendant's car; that they circled the block until five minutes of ten, when all three left the car and went to a Negro's house; that defendant stopped fifty feet from the door and the others went on toward the house. One of the others was lighting the fuse when someone hollered; that all three men ran until they reached 12th Avenue and 13th Street. Defendant went back for his car and looked for the others but failed to find them. He waited for them awhile at King's Drive-In, and then went home.

As a witness in his own behalf, defendant repudiated the written statement. He also introduced evidence of his good character and evidence tending to establish an alibi.

The first insistence of error is the court's overruling of the motion for a new trial. The motion contained 78 grounds. For convenience we will consider the arguments made by counsel for error in the order in which they appear in the brief.

Ground 7 of the motion for new trial challenges the court's ruling in this instance: Mr. Rosenfeld, Birmingham City Fire Marshal, testified he lived a little less than five blocks from the 1100 block of 12th Avenue North; that before midnight on the night of the 17th of July his attention was attracted to an unusual sound. In response to a request to describe the sound, he answered: "A. It was a dynamite sound. I have heard it before in that area, about ten times before. There was one explosion * * *." Thereupon, the following occurred:

"Mr. Rogers: We move to exclude that and ask the Court to instruct the jury not to consider that. It is an ex parte remark made by Mr. Rosenfeld, who is an experienced witness and knows better, and is not called for in the question.

"The Court: I do exclude the statement, that he had heard it a number of times in the neighborhood. Gentlemen, that is an improper statement and I ask the jury not to consider it.

"The Witness: I am sorry.

"Mr. Rogers: At this time, we move for a mistrial on the ground that the statements made by the witness is so uncalled for it would prejudice the jury

and jeopardize the rights of this defendant to a fair and impartial trial.

"The Court: Overrule."

The court's exclusion of the volunteered information, and his specific instruction to the jury to disregard it, removed any prejudicial error in the witness' answer. See 7 Alabama Digest, Criminal Law, ☞1170½ (6), for numerous cases. The motion for a mistrial was properly overruled.

■ The defendant was asked on cross examination if he was present at the City Hall on the morning of July 18, 1958, when Ellis Houston Lee made a statement which was taken down in writing. The defendant answered that he remembered being in the room. The solicitor then read from the written statement questions propounded to the said Lee and his purported answers made thereto, and asked defendant if he heard such questions and answers. The following statement of the trial judge made during such questions is made the basis of the assignment as to Ground 42 of the motion for new trial:

"The Court: Does that lead up to or tie it to further questions which would tend to bring this man into the picture? There is a continuous objection to this line of questions. It has been my intention to confine the questioning as to what might have been asked Lee as to something which might tend to incriminate this defendant, is what I had intended to confine it to." The defendant reserved an exception to the court's remarks. The solicitor stated: "* * * As I understand it, you want me to skip down to some part that has a direct reference to the defendant?" The court answered: "Yes, sir."

"It is not improper for the court to make remarks in the presence of the jury, giving its reason for admitting or excluding evidence, or to state the purpose for which the evidence is offered or admitted; * * *." 23 C.J.S. Criminal Law § 992, p. 347.

We cannot agree with defendant's insistence that by its remarks the court expressed an opinion, in the presence and hearing of the jury, that the portions of the statements previously admitted tended to incriminate the defendant. The court also, in its oral charge, fully and carefully instructed the jury as to the purpose for which such evidence was admitted.

■ Exception was reserved to the following portion of the court's oral charge to the jury: "Gentlemen good character alone, even when proven to your satisfaction, is never sufficient to create a reasonable doubt as to the defendant's guilt." On this question the court further charged: "But good character, when proven to your satisfaction, and when taken into consideration with all the other evidence in the case, may generate a reasonable doubt as to the defendant's guilt, whereas, without that proof of good character, there would not be any reasonable doubt in your minds as to his guilt."

This instruction was a correct statement of law. Gettings v. State, 32 Ala.App. 644, 29 So.2d 677; Kilpatrick v. State, 37 Ala. App. 165, 66 So.2d 441. Scott v. State, 211 Ala. 270, 100 So. 211.

■ The basis of insistence of error as to Ground 51 of the motion for new trial is the following portion of the court's oral charge, to which exception was reserved: "Now, as I say, the duty of determining whether the confession was fully and voluntarily made rests with the court alone, and when the court determines the confession is admissible, the jury must accept it as competent evidence. They are not at liberty to reject it because under the facts they deem it to be involuntary."

The portion of the charge objected to is a correct statement of the law. "When a confession is admitted in evidence by the court, it is not within the province of the jury to inquire into its competency. Their only duty is to determine its credibility and effect. They cannot reject it as inad-

missible." Scott v. State, 211 Ala. 270, 100 So. 211, 213. See also Fikes v. State, 263 Ala. 89, 81 So.2d 303; White v. State, 260 Ala. 328, 70 So.2d 624.

■ The jury was fairly and accurately instructed that in determining its credibility and probative effect they might look to the surrounding circumstances under which it was made. Godau v. State, 179 Ala. 27, 60 So. 908, Robinson v. State, 38 Ala.App. 315, 82 So.2d 815, and cases there cited.

■ The court in its oral charge explained to the jury the purpose for which the testimony as to accusatory statements of Ellis Houston Lee, made in defendant's presence and hearing, and which defendant failed to deny, were admitted in evidence. Scott v. State, 249 Ala. 304, 30 So.2d 689. We find no merit in appellant's argument that such instruction singled out and emphasized this portion of the evidence.

■ The exception reserved to "all that portion of the court's charge relating to a conspiracy" is not sufficient to invite our review. Exceptions to the court's oral charge should set out the particular parts which are objectionable to the defendant, and not merely refer to the charge on a particular subject. Robinson v. State, 38 Ala.App. 315, 82 So.2d 815; McGhee v. State, 178 Ala. 4, 59 So. 573; Corder v. State, 32 Ala.App. 584, 28 So.2d 651; Head v. State, 35 Ala.App. 71, 44 So.2d 441; Favors v. State, 32 Ala.App. 139, 22 So.2d 914.

■ Ground 54 of the motion for new trial takes the point that the court erred in re-reading the indictment to the jury. The reading of the indictment was not prejudicial to the defendant. The jury was instructed that the indictment was not evidence against the defendant, but constituted a mere formal charge. They were further instructed that they were to decide the case solely on the evidence presented from the witness stand and that defendant's guilt must be established by the evidence beyond a reasonable doubt.

■ Ground 55 of the motion asserts error on the fact that the court charged the jury as follows: "Now, gentlemen, in regard to the count that I just read to you, there, I will say this: If you believe from the evidence beyond a reasonable doubt that the defendant willfully set off or exploded dynamite, or other explosive, or conspired with others to do so, in, under, or dangerously near, or sufficiently near to the dwelling house of William Blackwell, Jr.—sufficiently close to do substantial violence to the dwelling house, or to the occupants therein, or both, and if you further believe from the evidence beyond a reasonable doubt that there was a human being in that dwelling house on the occasion complained of in and as alleged in the indictment, and if you gentlemen believe from the evidence beyond a reasonable doubt that this all happened in Jefferson County, Alabama, then this would be a violation of the Statutes for which this prosecution is based."

Appellant cites and relies on the holding of this court in Tate v. State, 26 Ala.App. 542, 164 So. 112, 113, as authority for his contention that the charge was erroneous for the use of the words, "sufficiently near" and "sufficiently close" to the dwelling. The opinion in the Tate case clearly states that in view of the statute then existing making it an offense to set off explosive "in or under" an inhabited dwelling house, it was error to charge that defendant violated the statute if he set off explosive "sufficiently close" to a dwelling to do violence to the dwelling or its occupants. In view of the amendment to the statute by the addition of the words "or dangerously near," since the holding in the Tate case, we are of opinion the trial court's charge was correct.

■ Grounds 57, 58 and 59 of the motion for new trial relate to the following occurrence: After the jury had retired and deliberated for sometime they returned to

**32**

the courtroom and requested additional information. The court gave instructions in response to their inquiry. When the jury had retired after being so instructed by the court counsel for defendant excepted to the court's statements to the jury. Thereupon the court recalled the jury and gave them further instructions. After the jury had again retired counsel for defendant excepted to the court's last remarks. In order to present the matter for review on appeal, the exception must be taken before the jury retires. Prince v. State, 38 Ala. App. 363, 83 So.2d 620; Ennis v. State, 37 Ala.App. 716, 76 So.2d 183; Brown v. State, 27 Ala.App. 32, 165 So. 405; Sovereign Camp, W. O. W., v. Gay, 217 Ala. 543, 117 So. 78.

Defendant's requested charge No. A-1 was a mere statement of a legal principle without instruction as to the effect upon or application to the issues in the case, and not hypothesized on the evidence. Holloway v. State, 37 Ala.App. 96, 64 So.2d 115. It was properly refused.

Defendant's requested charges 30, 31 and 32 were properly refused, as being predicated upon a consideration of a part of the evidence. They ignored the evidence which tended to show aiding and abetting by defendant. See 6A Alabama Digest Criminal Law, ☞815(1).

Other charges refused to defendant were either covered by the oral charge or charges given at defendant's request, or they were abstract, argumentative or asserted incorrect principles of law.

"Whenever an article has an odor all its own and the witness knows the odor, if the identity is material, the witness may testify to the smell." Whetstone v. State, 19 Ala.App. 331, 98 So. 216.

The witness Rosenfeld testified that in connection with his duties as Fire Marshal he had had many occasions to smell the odor of exploded dynamite. It was competent for him to give as his opinion that the odor he detected at Blackwell's residence was dynamite.

The witness Rosenfeld testified that on the night of July 17, he heard two explosions, a minute or so apart. He was allowed to testify that at a point between Coppin's house and another house on the south side of 12th Avenue North, he found a hole in the ground about twelve inches across and eight or ten inches deep, in which there was an odor of dynamite, and the ground was soft and still warm. The defendant objected to this evidence on the ground that it was more.than 400 feet from the house embraced in the indictment. Evidence tending to show defendant guilty of another offense than that charged in the indictment is admissible when the two are so connected as to form part of one transaction. Dennison v. State, 17 Ala.App. 674, 88 So. 211.

The foregoing principle of law is applicable also to defendant's contention that the court erred in admitting into evidence a photograph showing damage to the house next door, caused by the bombing of the Blackwell home.

It is next insisted that the court erred in admitting into evidence the alleged confessions of the defendant. The voluntary character of defendant's statements to the officers was established prior to their admission. "There was no denial of the preliminary proof that there was no reward or inducement offered nor threats made, and that the statements all were entirely voluntary." Gillis v. State, 242 Ala. 550, 7 So.2d 563. See also Pilley v. State, 247 Ala. 523, 25 So.2d 57; Hawkins v. State, 267 Ala. 518, 103 So.2d 158; Lee v. State, 265 Ala. 623, 93 So.2d 757.

There was no error in the trial court's refusal to exclude the following portion of the written statement of defendant, on the ground that it was merely introduc-

tory and had no connection with the statement:

"July 18, 1958

Birmingham Police Department

"This is the statement of Mr. Herbert Eugene Wilcutt, white male, 25 years old, of 4409 11th Avenue North, Apartment G-, telephone number WO 1–3620, employed at Goslin Manufacturing Company as a mechanic. This statement made in the City Hall Building at 4:45 this date (A.M.) in the presence of Captain G. L. Pattie, Detectives V. T. Hart and T. E. Lindsey.

Re: Bombing

Date: July 17, 1958 at approximately 10:00 P.M."

Defendant's witness, James Morris, testified that defendant had worked under his supervision for almost three years; that he had never heard defendant's general reputation discussed; that he had never heard anybody say anything against him, or speak ill of him. He was then asked:

"Q. Did you ever know of his having any trouble whatsoever?"

The witness answered:

"A. No sir."

The solicitor objected. The court sustained the objection, and on the motion of the solicitor excluded the answer from the jury's consideration. This question was also asked the witness:

"Q. Basing your answer upon what you know about him and your association with him, could you tell the jury whether or not you know his general reputation for truth and veracity out there?"

The state objected, and after a colloquy between the court and counsel, the witness stated:

"A. I haven't heard anyone discuss it. That is the only part I know about his reputation, is from my own observance."

The court sustained the objection. The witness further testified that he had been closely associated with defendant and his fellow workers and had never heard anyone speak ill of him. This question was then asked:

"Q. Basing your answer upon those things and hearing those things discussed, would you tell the jury whether or not in your opinion, you know his general reputation for truth and veracity among those people with whom he works and you work and with whom you daily associate and come in contact with—tell whether or not you know it, and your answer can be yes or no?"

The court sustained the state's objection to said question. In this there was no error. General character or reputation cannot be based on the personal knowledge of the witness. Posey v. State, 38 Ala.App. 585, 90 So.2d 94; Stearns v. State, 266 Ala. 295, 96 So.2d 306.

During the cross-examination of the defendant numerous questions and answers were read to him from a written statement made by Ellis Houston Lee involving defendant in the commission of the crime, and defendant was asked whether Lee had made the statements in his presence. To the questions he replied that he didn't remember. In rebuttal, the state recalled T. E. Lindsey, the policeman who was present when Lee was questioned, who testified the statements were made in defendant's presence and the defendant did not deny or contradict them.

The general rule is that statements made in the presence and hearing of a person, accusing him of the commission of or complicity in a crime, are, when not contradicted or denied, admissible in evidence against him as an implied admission of their truthfulness by silent acquiescence. Burns v. State, 226 Ala. 117, 145 So. 436; Scott v. State, 249 Ala. 304, 30 So.2d 689; Lloyd v. State, 39 Ala.App. 595, 105 So.2d 709.

Moore v. State, 261 Ala. 578, 75 So.2d 135. For the statements to be admissible, the circumstances under which they were made, must have been such as to call for a denial on accused's part and to afford him an opportunity to make it, Moore v. State, supra.

It is insisted that the circumstances under which Lee's statement was made were such as would not have afforded defendant an opportunity to deny the truthfulness of the charges. Counsel relied on the holding in Moore v. State, supra, as authority for such contention. We are unable to agree. The situation here is not the same as that presented in the Moore case. True the witness Lindsey said he did not ask defendant if he wanted to deny Lee's statements. However, he testified that during the time he was questioning Lee defendant and Lee talked between themselves about the bombing. Defendant said to Lee:

"You know that bomb nearly blew my car up. It was thrown down right where my car was parked" * * * "Where were you during this? I rode off and left you boys up there, and I looked for you and couldn't find you, and I went back to King's Drive-In, and when you didn't show up I went on home."

The circumstances of the present case show that defendant was afforded an opportunity to speak. To paraphrase the language of the court in Jackson v. State, 213 Ala. 143, 104 So. 220: His silence, failure to deny the truth of the charges made, and the statements made by him are all relevant evidence.

There is no merit in the contention that the testimony was inadmissible because it was not adequately shown that defendant heard and understood the inculpatory statements. Simmons v. State, 7 Ala. App. 107, 61 So. 466; Hardwick v. State, 26 Ala.App. 536, 164 So. 107.

The evidence presented a jury question and was sufficient to sustain the judgment of conviction hence there was no error in the action of the court in refusing to defendant the requested general affirmative charge nor in denying the motion for a new trial on the ground of the insufficiency of the evidence.

There are some other matters treated in brief which we do not think merit discussion, but we have carefully considered the entire record, and finding it free from prejudicial error, the judgment of conviction is affirmed.

Affirmed.

On Application for Rehearing

PRICE, Judge.

In brief on application for rehearing appellant's counsel complains that we failed to consider in the original opinion what is termed his assignments of error 4, 7, 8, 9, 13, 14 and 15. We proceed to a discussion of the matters urged in the application for rehearing.

Assignment number 4.

The solicitor offered in evidence a diagram showing the location of the streets and houses in the vicinity of the Blackwell home. He informed the court the drawing was made by C. L. Stevens, a member of the police department, who was temporarily unavailable as a witness; that there was no contention on the part of the state that the diagram was drawn to scale, but the distances shown were actual distances measured by Mr. Stevens, who would be called as a witness to identify the drawing when he came into court. The court permitted the introduction of the diagram subject to its being properly identified at a later time. The witness Rosenfeld was shown the diagram, and he testified that it correctly portrayed the general location of the houses in the neighborhood. The following occurred:

"Mr. Watson: May I say also, Judge, that the writing on this is upside down, with reference to the north,

south, east, west points of the compass. The writing on it is upside down. It is upside down insofar as we ordinarily look at it.

"The Court: You mean if—the north is at the bottom of the picture?

"Mr. Watson: No sir, North according to the diagram is accurately—this (indicating) is north, but, where he has labeled the streets, he has labeled that upside down. His writing is on that wrong. It is upside down.

"Mr. Rogers: We object to that explanation made in the presence and hearing of the jury, and we move to exclude it.

"The Court: With the same reservations, I overrule the objection."

The drawing is before us as state's Exhibit KN. We are of opinion that the court did not abuse its discretion in overruling the objection nor in refusing to exclude the explanatory statements made by the solicitor.

Assignment number 7.

■ T. E. Lindsey testified on cross-examination that to his knowledge no warrant was issued for defendant's arrest up until the day of the preliminary hearing. This question was asked the witness:

"Q. And, at that time, had you discussed with anybody, the Solicitor, Mr. Watson, Mr. Perry, Mr. Bull Connor, or anybody in your office, your Chief-of-Police, Mr. Jamie Moore, or your partner, Mr. Hart, about getting a warrant in the Blackwell case?"

The state's objection was sustained to this question.

Assignment number 14.

The court sustained the state's objection to this question:

"Q. Now, then, on July 30, when you got this warrant down there, did you get it of your own volition?"

Assignment number 15.

Objection was sustained to this question asked the witness Hart.

"Q. If you felt that this defendant had any connection with the Blackwell house it would have been your duty as an officer to have gotten a warrant for him at the same time you got the other warrant, wouldn't it?"

The court's ruling was proper in each instance. The defendant was charged by indictment. Any evidence concerning the issuance of a warrant was immaterial and irrelevant and tended to shed no light on any issue in the case.

Assignments number 8 and 9.

■ The state's witness Vernon T. Hart was questioned by the defendant on voir dire examination as to the alleged confession of the defendant.

These questions were asked:

"Q. Everything said there wasn't written down was it?

"Q. And the things—do you remember the things that were said there that were left out of the written statement?"

The court properly sustained objection to each of said questions. The sole inquiry then before the court was whether the confession was free and voluntary. See Ala. Dig., Criminal Law, ⟶532 for numerous citations of authority.

■ Assignment number 13, relates to the court's sustaining of the state's objection to this question propounded to the witness Hart:

"Q. Well, he was, on that same day, placed under the lie detector twice on the Blackwell case, wasn't he?"

The fact of the taking of lie detector tests and the results of such tests are not admissible as evidence. In Jones on Evidence, Sec. 436 p. 829 it is said:

"Truth tests by lie detectors, truth serum, hypnosis and the like are very generally rejected by the courts, usually on the ground that there is no general scientific recognition of their efficacy."

See also the cases cited in the Annotation to the case of Henderson v. State, Okl., 230 P.2d 495, 23 A.L.R.2d p. 1308 Sec. 2.

Application overruled.