296 So.2d 786

**Randall A. SHIELDS**

v.

**STATE.**

**8 Div. 379.**

Court of Criminal Appeals of Alabama.

March 5, 1974.

Rehearing Denied May 7, 1974.

Watts, Salmon, Roberts, Manning & Noojin, Huntsville, for appellant.

William J. Baxley, Atty. Gen., and James W. Webb, Special Asst. Atty. Gen., for the State.

**DeCARLO, Judge.**

Appellant and Gary Luschen were indicted for first degree murder and were tried separately. Luschen was sentenced to death and appellant was sentenced to twenty (20) years.

Defense Counsel filed two pleas in abatement. Plea One challenged the composition of the grand jury, and Plea Two alleged that the grand jury was prejudiced as a result of adverse publicity attending the case. After a hearing with no offer of evidence, the pleas were overruled.

**I**

Appellant contends the trial court erred in overruling the pleas without demurrer, motion or issue being joined. Further, since no replication was filed by the State, the allegations contained therein were required to be taken as true.

In support of his argument, defense counsel relies on Carter v. State, 21 Ala. App. 406, 108 So. 642, in which a plea of misnomer was overruled. In reversing this decision, the Court of Appeals stated:

" . . . It will therefore be seen that the defendant's plea of misnomer was in form and properly before the court, to be disposed of as in such cases made and provided. The trial judge did not do this, but without motion, demurrer, or issue joined, overruled the defendant's plea. This is shown by the judgment and was error to a reversal."

■ Pleas in abatement are dilatory pleas, sustainable without proof only when the court can see from the pleading that they are well taken. If this is not clear, the appellant has the burden of establishing the asserted grounds of the plea. Howell v. Howell, 171 Ala. 502, 54 So. 601; Barnes v. Burke, 47 Ala.App. 253, 253 So. 2d 46.

■ To make a naked allegation the basis of a plea is insufficient. It must be followed by proof. The plea, upon its face, did not show that the fact alleged was true, but rather that proof was necessary for it to be sustained. The appellant cannot now complain. He declined to prove the allegations of his pleas.

**II**

Immediately following this ruling, appellant filed a motion to quash the jury venire on the same grounds of Plea One. Upon conclusion of the testimony in support of this motion, it was overruled.

Appellant claims the jury box from which the venire was drawn for the trial, and from which the grand jury was taken, was in law, clearly fraudulent, and his motion to quash should have been granted.

■ The fraud required to quash the venire is the intentional omission from the jury roll of names of a large number of legally qualified citizens, and such intentional systematic exclusion must be shown. State ex rel. Gregg v. Maples, 286 Ala. 274, 239 So.2d 198.

■ The jury list was compiled from such sources as the city directory, telephone book, voter's registration lists, tax assessor's rolls, and individual names submitted by commission members. Appellant contends that the selection of every eighth, ninth, or tenth name from each list was a systematic exclusion.

Testimony heard on the motion to quash, however, indicates a concerted effort was made by the jury commission to comply with the provisions of Title 30, Code of Alabama, 1940. Nothing was affirmatively

shown that demonstrated an intentional systematic exclusion of legally qualified citizens, and the trial court's overruling of the motion was correct.

Appellant also complains that a trial date was not set, but at the conclusion of the above hearing, the record shows the case was set for the following morning.

### III

■ Appellant's insistence that the court erred in refusing his motion for a non-jury trial is unfounded. Singleton v. State, 288 Ala. 519, 262 So.2d 768.

### IV

The primary contention upon which appellant seeks reversal is the insufficiency of the evidence. He argues that the evidence did not authorize a finding by the jury that the appellant conspired, aided or abetted in the homicide. For this reason, the facts presented at trial are reviewed here:

At approximately 7:00 A.M. on May 5, 1971, the bloody body of Robert Caneer was found in a ditch on the Bankhead Highway in Huntsville. Testimony from the State Toxicologist set the time of death about 8–10 hours earlier. The body contained over thirty stab wounds. Bloody bedding, pillows, sheets, etc. were found off a side road within a hundred yards of the body.

Witness James Tollett, who lived with deceased, testified that the appellant and one Ray Young came to Caneer's apartment on May 4 about 10:00 P.M. and purchased some heroin. Thereafter, appellant, Ray Young, and Caneer left about 11:00 P.M. enroute to the apartment of Ray Young. At the time Caneer left, he had in his possession some 10–15 bags of heroin.

Upon arrival at the Young's apartment (#7 in the complex), an argument arose between Mr. and Mrs. Young. In his immediate haste to leave the apartment, Ray Young had an automobile accident. His wife accompanied him to the hospital, and Caneer and appellant were left standing outside the apartment with the wrecked automobile.

Although the State introduced evidence of four conflicting statements made by appellant, certain facts in each one remained consistent. Admittedly, one Gary Luschen was with appellant at his apartment (#2 in the complex) later that same night, while Caneer was in the apartment of Ray Young. Luschen remarked to appellant that Caneer had given him a bad "fix", and he was going over to rob him. Luschen picked up a knife in appellant's kitchen and told appellant to go with him. Upon arriving at the Young's apartment, appellant went into the bathroom. He heard Caneer exclaim, "Why, Gary, why", but he did not leave the bathroom until Luschen came to the door. Appellant asked if Caneer was dead, and Luschen replied "I don't know." Thereafter appellant helped Luschen clean up and dispose of the body.

In one statement to a police officer, appellant remarked that after Caneer was killed, he and Luschen divided the ten packages of heroin. At the trial, however, he denied even seeing any heroin at that time. Appellant also contended that he was threatened by Luschen and forced to go with him to Young's apartment.

In Morris v. State, 146 Ala. 66, 41 So. 274, Judge Denson made these comments concerning the extent of proof necessary to establish a conspiracy:

". . . [C]onspiracy, need not be proved by positive testimony. It rarely is so proved. The jury are to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case."

He further commented that the existence of a conspiracy may be inferred from all the attendant circumstances accompanying

the doing of the act, and from the conduct of the appellant subsequent to the criminal act.

For his definition of "aid and abet", Judge Denson referred to the earlier case of Raiford v. State, 59 Ala. 106:

"The words aid and abet, in legal phrase, are pretty much the synonyms of each other. * * * They comprehend all assistance rendered by acts, words of encouragement or support, or presence, actual or constructive, to render assistance, should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid, should it become necessary, then that ingredient of the offence is made out. * * * "

■ Whether or not there was a conspiracy to commit the murder and whether or not the appellant aided and abetted in its commission were questions for the jury to determine from the parties' conduct. Here, the evidence was sufficient to submit the question of appellant's guilt to the jury, and it was within the jury's province to choose the testimony they would believe.

### V

Appellant's contention that he was guilty of first degree murder or guilty of nothing is without merit. *Morris,* supra.

### VI

During the cross-examination of appellant, the State posed questions concerning an incident which occurred on April 21, 1971. It was shown that on this particular night, while in the company of Luschen, appellant was read his "rights" by a police officer. Appellant asserts this was an occasion having no relation to the crime with which he is now charged and the testimony was prejudicial.

The cross-examination of a witness on a matter not brought out on direct examination is discussed in McElroy's Law of Evidence in Alabama, 2nd ed., Vol. 3, § 438.-01:

" . . . [T]he cross-examiner has the right to elicit any fact relevant to any issue under the pleadings in the case, including a fact relevant to the cross-examiner's own affirmative case—and this is true though the fact is not connected with any matter testified about on the direct examination of the witness." Madden v. State, 40 Ala.App. 271, 112 So.2d 796; Carter v. State, 191 Ala. 3, 67 So. 981.

■ The State's inquiries concerning the incident were relevant to the issue of voluntariness and were not to imply that appellant had previously been suspected of a crime. The court was not in error in permitting this testimony.

### VII

■ Appellant argues that the court erred in allowing the toxicologist to testify about oral statements made by appellant absent a Miranda warning.

The record reflects that at the time of the statements in question, appellant had already been advised of his rights by police officers.

■ Once Miranda has been complied with and a voluntary waiver obtained, it is not necessary to repeat the warning at the beginning of each successive interview. This is especially true when the questioning is done within hours of the preceding interrogation. Miller v. United States, 8 Cir., 396 F.2d 492.

### VIII

■ It is insisted that evidence of events occurring at Caneer's residence before the homicide, beginning with the purchase of heroin, was irrelevant and prejudicial. These facts comprised one continuous occurrence leading up to the homicide and were admissible as part of the res gestae.

■ As stated by the Alabama Supreme Court in Jackson v. State, 229 Ala. 48, 155 So. 581:

"* * * Everything constituting the one continuous transaction is admissible as of the res gestae. No matter how many distinct crimes may be involved, all the details of the one continuous criminal occurrence or adventure may be considered by the jury in passing upon the culpability, the wickedness, and depravity of the crime for which the party is being tried. * * *"

### IX

Next we consider whether the court properly admitted the bloody shirt worn by the deceased and the photographs of his body showing the wounds.

■ Generally, clothing of the deceased is admissible in homicide trials subject to shedding light on some issue in the case, and this is true even though the articles are in a gruesome or repulsive condition. Flannagin v. State, 48 Ala.App. 559, 266 So.2d 637.

■ The same is true of the photographs. They showed the wounds on the body and tended to corroborate the testimony of the toxicologist as to the number and location. Palmore v. State, 283 Ala. 501, 218 So.2d 830.

### X

■ Appellant asserts that the failure of the court to exclude the testimony of a State witness showing appellant's bad reputation for peace and quiet was error. He argues the witness had no basis for giving such testimony.

■ The appellant's motion to exclude was properly overruled. It is a well recognized rule that character or reputation, whether good or bad, cannot be proved by specific acts or conduct, but only by evidence of general repute. Williams v. State, 250 Ala. 549, 35 So.2d 567.

The witness stated on cross-examination that he was basing his testimony on what "we have heard of this young man from others."

### XI

In his oral charge, the judge gave this definition of a confession:

"A confession, Ladies and Gentlemen of the Jury, is an admission by the defendant of all the material facts constituting a crime charged."

Defense counsel asserts this instruction concerning the alleged confession by the appellant was erroneous and insists that no statement, written or oral, was a confession as defined by the court.

The oral charge given included not only a definition and instruction on confessions, but on admissions as well. The jury was directed to consider statements made by appellant in the light of all other evidence.

■ The record reveals that of the four statements made, one was reduced to writing and signed by the appellant. Whether these incriminating statements, taken with all the other evidence, were to be considered as a confession or an admission was for the jury's determination in evaluating the appellant's role in the homicide.

■ In charging the jury, it was incumbent on the judge to give the law applicable to all theories presented by the evidence. This was necessary to enable the jury to make a judgment in view of the testimony before them. Glover v. State, 21 Ala.App. 423, 109 So. 125.

■ Notwithstanding the foregoing, appellant's exception to the court's charge was insufficient. The exception was worded in this manner:

"The defendant further excepts to that portion of the oral charge in which the Court made reference to alleged confessions by the defendant, it being the contention of the defendant that no statement, written or oral, offered into evidence in the trial of this case is a confession by the defendant, as the word confession has been defined by the Court to the jury."

■ Exceptions to oral charges should set out the particular parts which are objectionable and not merely refer to the charge on a particular subject. Wilcutt v. State, 41 Ala.App. 25, 123 So.2d 193.

The exception outlined here was not acceptable in accordance with the rule in *Wilcutt*, supra.

## XII

We have studied and considered individually, each of the twenty-four charges requested by appellant and hold they were properly refused. The charges were either covered by the charges given at appellant's request or in the court's oral instructions. Others were either abstract, confusing, or incorrect statements of the law.

Our required search of the record revealed no instances of error and based on the foregoing, we affirm.

Affirmed.

All the Judges concur.

## ON REHEARING

DeCARLO, Judge.

Application for rehearing overruled and opinion extended by adding the following facts at the request of appellant:

1. That, after the Co-Defendant, Gary Luschen, armed himself with a knife at appellant's apartment, prior to the homicide, Luschen demanded of the appellant that appellant accompany him to the Ray Young apartment, and, at the time of the demand, Luschen threatened the appellant with the knife; that, as appellant was accompanying Luschen to the Young apartment, Luschen was carrying the knife; that the appellant, as he and Luschen approached the Young apartment, told Luschen that he didn't want to have anything to do with whatever was going to happen between Luschen and the deceased, Caneer, (Tr. p. 336); that the appellant left Luschen as soon as he and Luschen entered the Young apartment where Caneer was later killed by Luschen and the appellant went into the bathroom of the Young apartment and locked the door (Tr. p. 338); that after hearing Caneer cry out, "Why, man, why?", Luschen went to the door of the bathroom and called to the appellant, saying, "You have got to help me"; that the appellant then unlocked and opened the bathroom door and saw Luschen standing directly outside the door, covered with blood, and holding a bloody knife, and at that point Luschen told appellant that he had killed Caneer (Tr. pp. 341–342).

2. That the Madison County Jury Commission compiled the Madison County Jury Roll from not more than 1,000 so-called "volunteers" whose names were obtained by individual members of the Jury Commission, plus names obtained by the Jury Commission systematically selecting every eighth, ninth or tenth name from the Huntsville City Directory, the Huntsville telephone book, the Madison County voters registration list, and the Madison County Tax Assessor's rolls, exclusively; that each person whose name was so obtained was required to complete a form labeled "Jury Qualification Form", which contained information designed to disclose whether the candidate for jury service was disqualified for same by reason of some specific statutory disqualification; that, if one of the statutory grounds for disqualification did not appear on the form after it was completed, the candidate for jury service was automatically approved and his name was placed on the jury roll, and no other effort was made to ascertain his qualifications for

jury service; and that there were approximately 66,000 registered electors of Madison County at the time, and approximately 15,000 persons were placed on the jury roll.

3. That the incident wherein the appellant was read his "rights" by a police officer on April 21, 1971, occurred at approximately 12:00 o'clock midnight, and that the appellant had conceded in his prior testimony that he had been given the Miranda warning before he gave a statement to the police admitting his presence in the Ray Young apartment at the time Caneer was killed by Luschen, and that appellant had not disputed the testimony of police officers that he was given the Miranda warning at the time he was taken into custody, and before he made any admissions to the police.

Although the foregoing facts were in the record, they were only a portion of the evidence considered in forming our opinion.

We adhere to our original decision in this case and overrule the application for rehearing.

Opinion extended and application for rehearing overruled.

CATES, P. J., and TYSON and HARRIS, JJ., concur.